RICHARD M. GOODING AND MARCELLA M. GOODING, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54671. Filed December 31, 1956.

*Richard M. Gooding, pro se.*
*Marion B. Morton, Esq.*, for the respondent.

PIERCE, *Judge:* The respondent determined a deficiency in the income tax of the petitioners for the year 1951, in the amount of $883.60. The petitioners, in their pleadings, claim an overpayment of such tax, in the amount of approximately $15,800.

The questions for decision are:

1. Did petitioner Richard M. Gooding, upon or after a prior marriage to a Texas resident in November 1950, change his domicile from the State of Virginia (a non-community property State) to the State of Texas (a community property State), and thereby establish a marital community in Texas, so that there is includible in his gross income for the year 1951, pursuant to the community property laws of Texas: (a) Only one-half the salary which he received from employment in Washington, D. C., during the period of January 1 to June 20, 1951, which preceded the termination of such marriage by divorce; and (b) one-half of certain income which his former wife received during the same period, when she was maintaining a separate residence in Texas?

2. Are Gooding and his present wife entitled to apply as a credit, against their joint income tax liability for the year 1951, an arbitrary portion of amounts which the former wife paid, both before and after the divorce, with respect to a joint declaration and a purported amended joint declaration of estimated income tax for such year?

### FINDINGS OF FACT.

Certain facts have been stipulated; and the stipulation, together with the exhibits thereto attached, is incorporated herein by reference.

The petitioners, Richard M. Gooding (hereinafter called Gooding) and Marcella M. Gooding, are husband and wife. They filed a joint income tax return for the year 1951 with the collector of internal revenue for the district of Virginia.

Gooding is a petroleum chemist who, at all times since January 1947, has been employed continuously in Washington, D. C., by the Bureau of Mines, Department of Interior. Since October 1948 he has resided in or near Alexandria, Virginia; and, until at least November 23, 1950, he was domiciled in the State of Virginia (a non-community property State.)

On November 23, 1950, Gooding was married in Dallas, Texas, to Frances R. Lee, a resident of Texas (a community property State). She, at that time, was carrying on business in Dallas; and she occupied an apartment in that city. For about a week after the marriage, Gooding stayed in her Dallas apartment; and he then returned to Virginia, and continued his employment with the Bureau of Mines in Washington, D. C. He thereafter continued to be so employed, without interruption, up to and including the time of the hearing herein.

The wife, Frances Lee, on the other hand, remained in Dallas; and she has, at all times since, continued to reside there. In order to enable her, as a married woman, to carry on a partnership business in Texas, she and Gooding obtained an order from the District Court of Dallas County on November 27, 1950, which decreed that her disabilities of coverture were removed and that she would henceforth have the status of a feme sole for mercantile and trading purposes.

Subsequent to the marriage and after Gooding had returned to Virginia, he made several trips to Dallas to see his wife; and, in the case of each such trip, he took "annual leave" from his Washington employment. Frances Lee, likewise, made brief visits to see Gooding in Virginia. However, on March 31, 1951, the parties decided to separate and dissolve their marriage. The total time which Gooding spent in Dallas from the time of the marriage to the time of such separation was about 41 days; and most of these days were in the latter part of the year 1950.

Prior to the marriage, Gooding and Frances Lee informed their friends, families, and business associates, that they expected to live in Dallas after the marriage. Gooding, however, told his employers at the Bureau of Mines in Washington that he desired to continue his employment in that city, until such time as he could find some other suitable work in Dallas. From early November 1950 through most of March 1951, he distributed applications for employment to various organizations and individuals in Dallas, and he also advertised in two national magazines for employment in that city. But he found no such employment; and, in about March 1951, he decided to give up the idea of leaving his Washington employment.

Also prior to marrying Frances Lee, Gooding arranged to dispose of the furniture in an apartment which he then occupied in Alexandria,

Virginia; and, on about December 5, 1950, he gave up the apartment and shipped certain personal belongings, other than seasonal clothing and an automobile, to his wife's apartment in Dallas. Thereafter, for about a month, he lived in or about Washington, D. C., either with friends or in a rooming house. But, on January 5, 1951, he rented another furnished apartment in Alexandria, Virginia, which he continued to occupy until May 1, 1951; and thereafter, and throughout the taxable year here involved, he resided in other apartments in Alexandria, which were furnished by him. On December 14, 1950, Gooding made arrangements to change a checking account which he had with a Washington, D. C., bank into a joint account with Frances Lee; and she made a $5,000 deposit in that account. In February 1951, he purchased a new automobile in Alexandria, Virginia. He at no time had any interest in any real property located in Texas; nor did he ever carry on any business activities in that State.

On April 19, 1951, Frances Lee filed suit for divorce from Gooding in the District Court of Dallas County, and the divorce was granted on June 20, 1951. In this proceeding, Gooding waived service of citation upon him and filed his appearance; but otherwise, he did not appear or answer. Subsequently, during the year 1951, Gooding married his present wife, Marcella M. Gooding, the co-petitioner herein.

Under date of June 15, 1951, which was 5 days prior to the divorce, Gooding and Frances Lee executed, in Washington and Dallas, respectively, a written agreement pertaining to their property rights; and this was thereafter mentioned and approved in the divorce decree. The agreement recited that Frances Lee was a resident and "bona fide inhabitant of the State of Texas"; but it made no reference to the residence of Gooding. It also contained the following provisions respecting "community property" and 1951 Federal income taxes:

7. It is agreed that the community property of the plaintiff and defendant, which has been accumulated since the date of their said marriage, consists only of the salary earned by the defendant during the period from November 23, 1950, the date of their marriage, through the entry of the divorce decree in the said suit now pending between the parties hereto, by virtue of his employment by The United States of America, and of the salary earned by the plaintiff [Frances Lee] during the aforesaid period, together with the rents and revenues from her separate estate during such period. It is agreed between the parties hereto that such community earnings have been retained in the form of cash, save to the extent that such earnings have been expended in the discharge of community debts, that such cash has been divided between the parties hereto in equal parts and that one such part has been set apart and delivered to and is now held and retained by each of the parties hereto.

\*    \*    \*    \*    \*    \*    \*

11. It is further understood and agreed that each of the parties hereto shall file separate income tax returns for the year 1951, covering his separate income and one-half of the community income, and shall pay the tax so shown to be due provided, however, that plaintiff [Frances Lee] shall reimburse to defendant the difference between: (i) the tax liability as finally determined upon his separate return, and (ii) the tax liability which would have accrued to defendant had his income throughout the year consisted of the whole of his salary and the whole of the rents and revenue of his separate estate, neither diminished by the community interest of the plaintiff therein, nor increased by the defendant's com-

munity interest in the salary of the plaintiff and in the rents and revenues of plaintiff's separate estate.

On about March 15, 1951, which was shortly prior to their separation, Gooding and Frances Lee filed a joint declaration of estimated income tax for the year 1951. On this declaration, the estimated tax was shown to be $11,052.40; a credit was taken for estimated withholdings of $1,052.40; and $2,500 of the estimated balance of tax was paid. Subsequently an additional $5,000 was paid on this declaration; but the evidence does not show what portion, if any, of the same was paid prior to the divorce. All payments on this declaration (other than the credit for withholding taxes) were made by Frances Lee; and no portion thereof was paid by Gooding.

Subsequent to the divorce and under date of January 15, 1952, a purported amended joint declaration of estimated tax for 1951 was filed in the names of Gooding and Frances Lee. Gooding's signature thereon was not his own; it was written by Frances Lee without his knowledge or authorization. Gooding did not know that such declaration was being filed. On this amended declaration, the amount of the estimated tax for 1951 was increased to $43,800; the amount of the estimated withholding was changed to $1,300; and, after credit for the $7,500 paid on the original declaration, the balance due was shown to be $35,000. All of this latter amount was paid by Frances Lee; and no portion thereof was paid by Gooding.

On February 29, 1952, Gooding and his present wife, Marcella, filed a joint income tax return for the year 1951, on which they showed their home address to be Arlington, Virginia. In this return, the only income reported was Gooding's salary from his Washington, D. C., employment with the Bureau of Mines, in the amount of $7,347.70; and other salary received by Marcella in the amount of $2,953.33 (making a total of $10,301.03). The parties computed the tax on such income to be $1,600.24; claimed credit of $1,754.28 for withholdings from their salaries; and claimed an overpayment of tax in the amount of $154.04. No credit was taken for any portion of the amounts which Frances Lee had paid on the two above-mentioned declarations of estimated income tax.

In March 1952, after Gooding and his present wife had filed their said joint income tax return for 1951, Frances Lee telephoned Gooding from Dallas, Texas; stated that there was community income to be reported by them; and asked him to cooperate with her in filing returns which would include the same. Thereupon, Gooding sent Frances Lee's accountants a statement of the amount of salary which he had received from his employment in Washington, and of the amount of tax which had been withheld with respect to such salary. The accountants then prepared and sent to Gooding a proposed separate individual income tax return to be filed by him for the year 1951, on which there were shown certain amounts of purported community property income, and on which it was indicated that Gooding should

claim a credit of $14,369.45, representing part of the $42,500 which Frances Lee had paid on the above-mentioned declarations of estimated income tax. Gooding, in dealing with the accountants, did not inform them that he had remarried; nor did he inform them that he and his present wife had already filed a joint income tax return for the year 1951.

Gooding did not use the proposed individual income tax return which the accountants sent him; but, rather, he and his present wife, Marcella, prepared and filed under date of March 15, 1952, an amended joint return of their 1951 incomes. In such amended joint return, they included Marcella's salary; excluded one-half of Gooding's Bureau of Mines salary for the period of January 1 to June 20, 1951, with an explanation that such salary was community income of which one-half was attributable to Frances Lee; and also included income of $38,503.24, which was described to be Gooding's share of community income received by Frances Lee, consisting of partnership income, dividends, and interest, less a substantial loss in respect of Texas ranch property. Also, on such amended joint return, Gooding and his present wife claimed a credit for taxes paid in the amount of $16,123.73, consisting of $1,754.28 withheld from the salaries of Gooding and Marcella, plus $14,369.45 of the $42,500 paid by Frances Lee on account of the above-mentioned declarations of estimated tax. Based on such items, Gooding and his present wife claimed on such amended joint return, an overpayment of tax in the amount of $3,643.07. Subsequently, in their pleadings herein, they alleged that portions of community income reported by them should be eliminated; and, after applying the same amount of credit for taxes paid, they claimed an overpayment of their tax liabilities in the amount of approximately $15,800.

The evidence does not disclose the amounts or sources of the 1951 income of Frances Lee; nor does it include a copy of her 1951 income tax return, or show whether the amounts which she paid on the above-mentioned declarations were in excess of her separate income tax liability for said year.

The respondent, in his notice of deficiency, made only one adjustment to the income reported by the petitioners on their amended joint return for the year 1951; this was to restore the portion of Gooding's Washington, D. C., salary, which had been excluded. By reason of such adjustment, respondent determined the deficiency of $883.60 which is here involved.

Gooding did not, at any time here involved, change his domicile from the State of Virginia to the State of Texas; nor did he and Frances Lee establish a marital community in the latter State. None of the salary which Gooding received in 1951 from his employment in Washington, D. C., was subject to the community property law of the State of Texas.

OPINION.

*I.*

The controlling factor in determining whether, pursuant to the community property law of the State of Texas, Gooding and his former wife, Frances Lee, are entitled to divide their incomes for the period of January 1 to June 20, 1951, is whether they were during such period members of a Texas "marital community." The answer to this depends, in turn, upon whether Gooding changed his domicile from the State of Virginia to the State of Texas, either upon or following his marriage to Frances Lee; for, except in extraordinary circumstances that are not here present, it is necessary that the husband have his domicile in a community property State, in order to have a marital community therein. *Payne* v. *Commissioner*, 141 F. 2d 398 (C. A. 5), affirming 1 T. C. 360. See also *Herbert Marshall*, 41 B. T. A. 1064.

In the *Payne* case, *supra*, Circuit Judge Waller set forth, in a specially concurring opinion in which the other two members of the court concurred also, the following principles pertaining to the community property law of Texas, which are here pertinent:

Marital community is like, or in the nature of, a partnership between husband and wife, but it is not in Texas a matter of agreement and is brought about by operation of law. * * * The laws of Texas, having no extra-territorial effect, could not give the wife one-half of her husband's earnings in Ohio [the domicile of the husband there involved].

There is a rule of law that the domicile of the husband is the domicile of the wife and this law obtains in Texas. The circumstances must be out of the ordinary before the law will declare that the domicile of the wife is the domicile of the husband. The wife, therefore, is usually obliged to take the domicile of her husband. * * * The marital domicile is not susceptible of division. Rights that inhere in the marital relationship stem from the law of the marital domicile. * * *

The theory of the law of the marital community seems to demand a refusal to give any legal effect to a voluntary separation of those who are bound by the most solemn obligations to live together.

In the instant case, our analysis of all the evidence impels us to conclude that Gooding did not at any time, either at or after his marriage to Frances Lee, change his domicile from the State of Virginia to the State of Texas, so as to establish a marital community within the latter State. Gooding concedes that, at the time of his marriage to Frances Lee in November 1950, he was domiciled in Virginia; and there is no dispute that he was domiciled there also after their divorce on June 20, 1951. From the marriage until the separation of the parties in March 1951, Gooding was in Texas for only a total of 41 days; and less than half of this time, or not more than 3 weeks, was in the year 1951 which is here involved. Also, he has been employed in Washington, D. C., continuously from 1947 to the present time.

It is true that, prior to his marriage to Frances Lee and for a short period thereafter, he did expect to move to Dallas, Texas; but, as he told his employer, he did not wish to terminate his Washington,

D. C., employment until such time as he might succeed in finding a position in the Dallas area. However, he found no such position; and, after distributing a number of job applications, he finally gave up the idea of leaving his work in Washington. All visits to his wife in Dallas were made on "annual leave," taken from such continued Washington employment.

On January 5, 1951, Gooding rented a new apartment in Alexandria, Virginia. In February 1951, he there purchased a new automobile. On May 1, 1951, he rented still another apartment in Alexandria, and acquired furnishings therefor. He, at no time, established a family home in Texas; and he, at no time, accepted any employment or carried on any business activities in that State.

As was said in *Sivalls* v. *United States*, 205 F. 2d 444 (C. A. 5), certiorari denied 346 U. S. 898:

The essentials of a domicile of choice are the concurrence of actual, physical presence at the new locality and the intention to there remain. It is also essential that the intention to establish a domicile of choice relate to the present and not to the future. * * *

We hold that Gooding has failed to carry his burden of establishing that he and Frances Lee had a marital domicile in Texas during the period of January 1 to June 20, 1951. We further hold that his gross income for the year 1951, which he reported on the joint return with his present wife, should be recomputed, so as to include therein all the salary of his 1951 employment in Washington, D. C., and so as to exclude therefrom any portion of the income which Frances Lee derived in Texas.

*II.*

The second question presented is whether Gooding and his present wife, Marcella, are entitled to claim on their joint 1951 return, as a credit for taxes paid, $14,369.45 of the $42,500 which Frances Lee paid in respect of the original declaration of estimated income tax, and the purported amended declaration of estimated income tax, for the year 1951. We hold that this question should be answered in the negative.

After the petitioners had filed their joint income tax return for the year 1951, Frances Lee telephoned Gooding and suggested that he and she should divide between them and report for income tax purposes, as Texas community income, certain of their respective incomes for the period of January 1 to June 20, 1951. And, thereafter, the accountants for Frances Lee prepared and sent to Gooding, a proposed separate income tax return to be filed by him, on which certain community income was included, and an offsetting credit of $14,369.45 for estimated taxes paid, was shown. This purported return reflected the terms of the marital settlement made between Gooding and Frances Lee immediately prior to their divorce, to the effect that the parties would file separate returns for the year 1951, that each of them would report certain community income, and that Frances Lee would "reimburse" Gooding for the amount of any additional tax which might re-

sult from the inclusion of such community income. Actually, such agreement was ineffectual; for, as we have hereinbefore pointed out, a marital community in Texas may not be created by agreement of the parties, but is created only by operation of law. *Payne* v. *Commissioner, supra.*

Gooding did not inform Frances Lee's accountants, at the time when they suggested the amount of such credit, that he had remarried; nor did he inform them that he and his present wife had already filed a joint return of their incomes. Also, he did not use the proposed separate return which the accountants had sent him. Rather, he included the community income in an amended joint income tax return with his present wife; and then, by using the credit of approximately $14,000 which the accountants had suggested for use on a separate return, he and his present wife purported to establish an overpayment of $3,643.07. Subsequently, in their pleadings in this Court, Gooding and his present wife have sought to apply the same credit against reduced amounts of community income, and thereby establish an overpayment of approximately $15,800, which they allege is refundable to them.

We find no merit, whatever, in the petitioners' claim to such credit. The amount of this claimed credit is greater than the aggregate gross incomes of both Gooding and his present wife; and it also exceeds the total tax due in respect of their aggregate separate incomes, which was more than satisfied by the withholdings. Moreover, there is no evidence that the $7,500 which Frances Lee paid on the original declaration of estimated tax filed by her and Gooding is greater than their aggregate tax liabilities, so as to produce any overpayment; and it is obvious that such is not the case, for Frances Lee found it necessary to pay the still further amount of $35,000 on an amended estimate. Also, Gooding was not a party to such amended estimate; for he and Frances Lee were divorced at the time when it was filed, he did not sign it, and he had no knowledge that it was being filed.

Gooding's attempt to take credit for taxes paid by Frances Lee, when there is no need for "reimbursement" of any additional tax liability arising from the inclusion of her income, violates the agreement of the parties. Also, since the parties were not married at the end of the year 1951, provisions for a division between husband and wife of amounts which they have paid on a joint declaration of their estimated income tax liabilities, are not here applicable.

Moreover, since Gooding and his present wife did not pay any of the $14,000 for which they claim credit, such amount cannot represent an overpayment by them.

We hold that, in recomputing the joint income tax liability of the petitioners, no credit should be allowed for any portion of the $42,500 which Frances Lee paid on the above-mentioned declarations of estimated tax.

*Decision will be entered under Rule 50.*