245 P.2d 262

**LEIGH et al. v. SWARTZ.**

No. 5521.

Supreme Court of Arizona.

May 26, 1952.

Carlos G. Robles and Krucker & Evans, all of Tucson, for appellants.

James Elliott Dunseath, of Tucson, for appellee.

UDALL, Chief Justice.

This is an appeal by defendants, Joe Leigh and Harry R. Brown, from that portion of the judgment of the lower court awarding plaintiff (appellee), Le Verta W. Swartz, $9,000 as damages for alleged fraudulent representations of the defendants in connection with a certain real estate transaction. The parties having expressly waived a jury, the matter was tried to the court and after a three day trial, it made findings of fact and conclusions of law before entering judgment quieting title and awarding damages.

The facts in the case are quite complicated and we are presented with a voluminous transcript in addition to numerous exhibits. One wanders as in a maze at the finagling of defendant Leigh in this matter. The record presents a confusing and baffling network of high finance in his dealings with the plaintiff Swartz that far outstrips that shown in the related case of Leigh v. Loyd, 74 Ariz. 84, 244 P.2d 356.

The pertinent facts, stated in a light most favorable to sustaining the judgment, are as follows: In March or April of 1947, the defendant Brown acquired title to the realty and improvements known as La Fiesta Restaurant, 2834 E. Grant Road, Tucson, Arizona, from Maude Bevel. He assumed three realty mortgages on the property, a chattel mortgage against the equipment, and paid Miss Bevel $3,200 in cash. A short time later he entered into a partnership with John R. Troxell who assumed one-half of the existing obligations and paid Brown $3,400. They operated the restaurant for about a year, and because business was bad, listed the property with the defendant Joe Leigh, a real estate broker, for sale. Brown then went to work for Leigh as a real estate salesman.

About a month after the listing, Leigh and Brown decided to convert the property into a rest home and Leigh purchased Troxell's partnership interest for $1,000. Legal title was conveyed to one Ray Hamblen to hold for the defendants. They then refinanced the third mortgage and gave the new mortgagee a $1,000 bonus. To obtain the money to remodel and convert the property into a rest home, another mortgage was placed on it for $2,500.

During a visit to Tucson in March 1947, Mrs. Swartz, a widow 64 years of age and without any previous business experience, discussed with Leigh the possibility of investing the proceeds from the sale of her home in Williamsport, Pennsylvania. She returned to Williamsport and Leigh wrote to her about the property here in question and suggested that it would be a good investment. She sold her home and moved to Tucson, arriving there the first part of December, 1948. Shortly thereafter Leigh contacted her about buying a half interest in the property for $20,000. He represented to her that he was the sole owner, that it was worth $50,000, that it was fully equipped (with the exception of a few pots and pans) to operate a rest home or a maternity hospital, and that it would rent the next five years for at least $700 per month. No mention was made of the liens or encumbrances on the property which amounted to over $17,000.

The deal was closed on December 8, 1948, when Mrs. Swartz paid Leigh $10,000 in cash and agreed to pay the balance of $10,000 from her half of the income from the property. Ray Hamblen conveyed the full legal title to Mrs. Swartz, who simultaneously executed a deed to a one-half

interest to Leigh and he executed a deed to Brown for a one-quarter interest. The Leigh and Brown deeds were not recorded until two days before this trial began but were placed in escrow with a title insurance company.

Mrs. Swartz, on December 8th, executed a lease on the property for five years at a monthly rental of $700 per month. During the next few months, Mrs. Swartz, at the direction of Leigh, also executed various legal documents including two realty mortgages as security for the sum of $26,000 which was used to pay off the previous obligations and the expenses of remodeling. The rent on the above lease, due to remodeling of the property, did not start until April of 1949, and in September of the same year the tenants were financially unable to continue and vacated the premises. Leigh received the advance payment of $2,100 on the lease and the rent for April and May of 1949 (without distributing to Mrs. Swartz and Brown their share), at which time the plaintiff became dissatisfied, consulted a lawyer and on his advice took over the active management of the property and the collection of the rents. The latter part of September 1949, Mrs. Swartz then leased the property to the Tucson General Hospital for two years at $525 per month.

Mrs. Swartz started this action in September of 1949, praying for an accounting and that legal title to the premises be quieted in her. At the end of the trial the plaintiff presented a motion to amend the complaint to include damages for the alleged fraudulent representations of the defendants. The court quieted title to a one-half interest in the plaintiff and a one-quarter interest in each of the defendants. The court also found a one-half interest in the property at the time of the sale, after deducting the existing encumbrances, to be worth $6,000 and assessed plaintiff's damages at $9,000. After denial of their motion for a new trial this appeal was taken.

The defendants contend very strenuously that the trial court erred in permitting the amendment of the complaint after the trial had been completed, on the grounds that it set forth a new cause of action, changed the issues from a suit in equity to a legal action and it deprived them of a right to trial by jury.

 Amendments to conform to the evidence under section 21–449, A.C.A.1939, Rule 15(b) should be liberally allowed in the interest of justice and are within the discretion of the trial court. Aiken v. Portis, 59 Ariz. 101, 123 P.2d 169; Sanders v. Brown, 73 Ariz. 116, 238 P.2d 941. The spirit and purpose of allowing these amendments is for the case to be ultimately tried on its merits so that the parties to the litigation, in one trial, will receive all the relief to which they are entitled. Therefore if evidence is presented in the trial of a case which presents a new or different theory from that alleged in the

pleadings, and the adverse party does not object to the introduction of that evidence, that issue is then tried by implied consent and the pleadings, upon request of counsel, should be amended to conform to the evidence.

We have carefully reviewed the record in the instant case and suffice it to say that we are satisfied that the evidence introduced without objection at the trial would support a pleading alleging fraudulent representations. All the elements are present including the damages and the value of the property at the time of the sale to Mrs. Swartz. We find no abuse of discretion by the trial court in allowing the amendment to the complaint.

Nor is there any merit to the contention that the defendants were deprived of the right to a jury trial of the damage issue. The minutes show that originally a jury was demanded, but the judgment recites that at the beginning of the trial a jury was expressly waived by the parties and the case went to trial before the court without a jury. During the course of the trial the record is silent as to any demand by the defendants for a jury to try such issues and in fact no such demand was thereafter made to the trial court. It was only after the trial had ended and the court had permitted the pleadings to be amended to correspond to the proof adduced and judgment was entered that the defendants, on motions for a new trial, injected this argument. While the right to trial by jury remains inviolate in this state, demand for the same must be timely made or it is deemed to have been waived.

The cases relied upon by defendants such as Columbia River Packers Ass'n v. Hinton, D.C., 34 F.Supp. 970, 978, are, we believe, readily distinguishable upon the facts. To have granted a trial by jury at this time would have meant a complete retrial of the entire case with all the attendant expense and time-consuming delay. In this case the demand for a jury was too late, as unquestionably the issue of fraudulent representations as to the property values and rental returns out of which plaintiff's damages arose was tried by implied consent.

The defendants urge that the trial court erred in admitting into evidence the transcript of testimony of the defendant Leigh before the State Real Estate Board, as it was irrelevant and immaterial inasmuch as the inquiry covered a period of time long prior to the date Mrs. Swartz purchased her interest. In an accounting submitted to Mrs. Swartz, Leigh had made a $1,500 charge against the property for services rendered and on cross-examination was asked if the following testimony was given before the Real Estate Board at a hearing on June 14, 1949 (over six months after Mrs. Swartz purchased her interest):

"Mr. Talley: Were any charges ever made in connection with any

services on this property? Did you ever make any charges in handling this property in any respect?" (which was answered) "No."

The transcript was then offered and received for impeachment purposes which we believe was wholly proper. Leigh attempted to explain that the inquiry before the Real Estate Board covered only the period before December 8, 1948, which would not render it inadmissible for impeachment purposes but would only affect the weight to be given to it. This was a broad question and not limited to any time period. It was a prior inconsistent statement and was properly admitted for whatever it was worth, to impeach the defendant Leigh.

▆▆▆ Defendants also assign as error the admission of evidence concerning an attempted compromise agreement between Leigh and Mrs. Swartz, and rely upon the well-established rule laid down in Schneider v. McAleer, 39 Ariz. 190, 4 P. 2d 903, to the effect that ordinarily no evidence of compromise is admissible as an admission of liability. We agree with this rule and think it is a very sound one, but this evidence was admissible for another reason. Plaintiff attempted on the cross-examination of Leigh to get him to admit that the compromise failed because Mrs. Swartz would not go along with his plan and thus defraud Brown of his interest. No attempt was made to show the terms of the agreement but only the fraudulent purpose of Leigh (which he vigorously

denied) in return for the settlement. This testimony was clearly admissible, not to show the terms of a compromise agreement or that such an agreement was contemplated but to show the fraudulent purpose and character of the defendant Leigh. Evidence may be clearly inadmissible for one purpose yet the same evidence may be proper and admissible for some other legitimate purpose. 20 Am.Jur., Evidence, section 263.

▆▆▆ Defendants next complain that the trial court erred in the admission of plaintiff's exhibit S. into evidence. Exhibit S. is a "closing statement" prepared by a real estate company in Tucson for the sale of this property to Maude Bevel. It shows the total selling price for the sale of the property on January 27, 1947. Defendants' only objection to its admission at the time of the trial was that it was too remote in time and the conditions were not shown to be the same as those existing at the time of sale to Mrs. Swartz. It is now too late for the defendants to argue that it was also inadmissible because it was hearsay, as this court will not consider an objection that was not first made in the lower court. Cooper v. Francis, 36 Ariz. 273, 285 P. 271. Plaintiff concedes that the exhibit was remote and had little, if any, weight and apparently the trial court took the same view because it found the property to be worth over $12,000 more at the time of the sale to Mrs. Swartz than the selling price shown by this exhibit.

We agree with the parties that the admission of this exhibit was erroneous as it was too remote in point of time and the conditions were not shown to be the same. This action was tried to the court without a jury and since there was sufficient competent evidence to support the finding as to the value of the property together with the court's statement that it would be admitted "for what it is worth", we must assume that the lower court disregarded this exhibit. Hiatt v. Lee, 48 Ariz. 320, 61 P.2d 401, 107 A.L.R. 444; Collison v. International Ins. Co., 58 Ariz. 156, 118 P.2d 445.

The lower court found as a fact that a confidential relationship existed between Mrs. Swartz and Leigh which the defendants assign as error. They cite and rely upon the following quotation from In re McDonnell's Estate, 65 Ariz. 248, 179 P.2d 238, that a mere friendly relation is insufficient upon which to base a confidential relation:

"* * * a confidential relation * * * is a relation of parties in which one is bound to act for the benefit of the other and can take no advantage to himself from his acts relating to the interest of the other * * * it is denied that * * * mere confidence or implicit faith in another's honesty and integrity is sufficient to constitute a fiduciary or confidential relationship. So too, mere friendly relations are insufficient for this purpose." 37 C.J.S., Fraud, § 2 (2), at pages 213–214.

It is true that Mrs. Swartz and Leigh were very friendly—he frequently addressed or referred to her as "Aunt Bud" though they were not related—and that her confidence in him was increased because of this friendship. We believe as did the trial court that a confidential relationship existed between them. Leigh was introduced and highly recommended to Mrs. Swartz as a real estate broker. She discussed the possibility with him of finding a suitable investment for the proceeds from the sale of her home and that was the main point in their correspondence. He repeatedly assured her that if she would trust him and let him handle it in his own way that she would come out all right and "I will look out for your interest." Finally he was certainly acting as a broker or agent in the deal as to the one-half interest in the property that belonged to Brown. This was sufficient in this case to establish a broker-client relation, and we agree with the trial court's finding that a confidential relation existed and the defendant Leigh was guilty of fraudulent concealment or constructive fraud. Furthermore, after a careful review of the record we believe there was substantial evidence presented upon which the trial court based its conclusion that there was also actionable fraud on the part of Leigh.

Counsel for defendant Brown vigorously assert that the trial court erred in find-

ing that he fraudulently induced Mrs. Swartz to purchase an undivided one-half interest in the property in question. It is urged that such a finding is not supported by the evidence. An analysis of the evidence would seem to sustain this contention. Mrs. Swartz testified that Leigh told her no one was in on the deal "but you and I" and later specifically told her that Brown had no interest in the property as he was merely working for him. She also stated that her first direct contact with Brown was in the month of April, following the purchase on December 8, 1949. From Brown's testimony it appears that he did not know of the sale until a month after it was consummated; that he received no part of the purchase price of $10,000 paid by the plaintiff and in fact never realized anything from his interest in the property. Brown also testified that he assumed she knew of his interest but he never told her until he and Leigh had a "falling out", at which time she was apprised of Leigh's past crookedness and unreliability.

No particular significance can be attached to Brown's statement that "I gave Mr. Leigh the whole thing to handle in any way he saw fit", for the reason that this clearly referred to the remodeling job Leigh was handling and had no reference to the sale to Mrs. Swartz. Certainly the evidence falls far short of showing a direct confidential relationship between Brown and the plaintiff. Therefore, if Brown is to be held liable for damages it must be on Leigh's testimony and it appears obvious that the trial court justly placed but little, if any, credence in his testimony. Plaintiff, however, greatly relies in establishing agency upon Leigh's statement that "Brown told me to go ahead and handle it any way I saw fit". However, in context, this clearly had reference to a sale other than the one to Swartz.

Furthermore we do not believe that such a broad delegation of power from a principal to an agent justifies an assumption that the agent is thereby at liberty to make false and fraudulent representations to a prospective purchaser. For the principal to be bound there must be a concert of action which is not shown in the instant case. It is our considered opinion that the evidence does not show Brown to have been a party to this fraud and hence we hold that the judgment for damages assessed against him must be reversed.

It would unduly extend this opinion to treat at length the remaining assignments of error. Suffice it to say that we have considered each of them and find that they are without merit.

The learned trial court was confronted with a difficult task in trying this involved matter and its rulings on evidentiary matters displayed a high degree of skill and sense of fairness. It will be recalled that the part of the judgment quieting title in the parties for their respective interests in the property was not appealed from.

That portion of the judgment awarding the plaintiff damages in the sum of $9,000 against defendant Harry R. Brown and affixing a lien upon his one-quarter interest in the property is reversed, but in all other respects the judgment as entered by the lower court is affirmed.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.