421 P.2d 923

**GIBRALTAR ESCROW COMPANY, Appellant,**

v.

**THOMAS J. GROSSO INVESTMENT, INC., Appellee.**

**No. I CA–CIV 164.**

Court of Appeals of Arizona.

Dec. 27, 1966.

Murphy, Posner & Franks, Phoenix, by Jerome L. Froimson, James H. Harries, Phoenix, for appellant.

Charles M. Brewer, Phoenix, for appellee.

STEVENS, Chief Judge.

This is an appeal by the defendant, Gibraltar Escrow Company, from a summary judgment in favor of the plaintiff, Thomas J. Grosso Investment, Inc. Procedural problems which were presented have been resolved by our recent opinion in the case of Gabriel v. Murphy, decided 14 Decem-

ber 1966, 4 Ariz.App. 440, 421 P.2d 336, and they need not be repeated here.

## FACTS

The summary judgment was based upon the pleadings; a deposition of the defendant's agent and co-defendant, Don B. Smith; and the defendant's opposing affidavit. The deposition of Don B. Smith was taken after his discharge from Gibraltar. It contains the following facts:

Gibraltar was incorporated in June of 1962, its primary purpose being "to handle * * * the financing and escrowing for * * *" John F. Long homes. Smith, who was experienced in this kind of work, was employed by John F. Long to organize and manage Gibraltar. Smith was instrumental in the choice of forms to be used. He developed practices and procedures that could be coordinated with the activities of the banks, title companies, mortgage companies, loan departments and sales forces of the Long interests. Two girls were transferred to Gibraltar from Long's Mortgage Department, and the services of Long's accounting staff, located at the main offices, were made available. Smith's duties as general manager and sole operations officer included "supervision and preparation of the instruments; to supervise the preparation of the settlement sheets, disbursement funds, to solicit outside escrow business, which would be business that wasn't in connection with the sale of Long new homes." He was in complete charge of the Gibralter offices, subject only to control by Long executives, who were located in the main offices. Smith was authorized to order the accounting department to draw checks upon a trust account, which contained money deposited in conjunction with the escrows. This could be accomplished at the sole request of Smith. The account balance varied from $40,000 to $160,000. It was not unusual to have money drawn out of the account before any funds from the escrow transactions were deposited in it.

Gibraltar handled "inside" and "outside" escrows. The outside escrows were all sales other than those of Long homes. In the normal outside escrow, Smith would have his secretary fill out an escrow instruction, cash report and cash deposit slip, the latter two being used only in instances where deposits were received. The escrow instructions contained, among other things, the terms of the sale, names of the buyers and sellers, the legal description, the closing date, the manner of payment, the amount of deposit and how the final cash disbursement was to be made and to whom. Smith, who kept duplicate copies in the Gibraltar offices, would send the original and remaining copies to the accounting offices. If Smith did not send in the cash report and deposit slip, Long had no way of knowing that cash was received.

In his position as general manager, Smith set up two escrows on existing real estate. The sellers of the property were Charles E. Webb and Jean C. Webb, who are co-defendants in this suit with Smith and Gibraltar. The "buyers" were fictitious persons. Smith knew this at the time he signed their names to the escrows. These escrows were drawn at the request of Webb, who wanted to obtain interim financing on the strength of the fictitious escrows. The purpose of these escrows was to give to whomever loaned money to the Webbs the appearance of security. In other words, the lender would think that his money was coming from the funds supposedly received under the escrows and already in the hands of Gibraltar.

As a result of the fictitious escrows and representations by Smith that funds were available for assignment to Grosso, Grosso paid $20,000 to Gibraltar. Smith prepared two supplemental escrow instructions and notes. The instructions signed by the Webbs directed Gibraltar to pay to Grosso the sums of $12,000 and $10,000 out of the respective escrows. The notes evidenced the debts plus interest. The interest of $2,000 was for the use of the $20,000 for less than two months. At this point Smith knew that there was no money in the escrow.

The money from Grosso was deposited in the Gibraltar trust account. The Long accounting office subsequently made payment to the Webbs on the strength of a cash disbursement slip signed by Smith.

Attached to Smith's deposition were exhibits to which Smith made reference in his testimony. These were the escrow and supplemental escrow instructions, the notes, the checks signed by Grosso, a receipt for deposit, escrow ledgers and a letter to Grosso's agent advising him that sufficient funds were available in the escrow accounts. The letter was written after payment by Grosso.

Upon discovery of the defendant's fraudulent scheme, Grosso brought an action against the Webbs, Smith and Gibraltar. In its second amended complaint, Grosso alleged that Smith "acting at all times hereinafter mentioned as the duly appointed and acting General Manager and Escrow Officer of" Gibraltar, fraudulently induced the plaintiff to loan monies to the Webbs. Gibraltar's answer admitted that Smith was its General Manager and Escrow Officer, but denied that any of his acts were performed in that capacity.

Following the pleadings and deposition of Smith, Grosso filed a motion for summary judgment against Smith and Gibraltar. This motion was opposed by an affidavit signed by Gibraltar's treasurer stating that the acts of Smith were "in no way a part of the duties of said Don B. Smith while an employee of Gibraltar", "they were completely outside of his authority", "he was acting completely for himself and not for the benefit of Gibraltar", "(Gibraltar) in no way benefited by or could have benefited by his (Smith's) acts", and "(Gibraltar) at no time had any contractural relationship with the plaintiff as escrow agent for or on behalf of the plaintiff".

Grosso's motion for summary judgment was granted and Gibraltar appealed.

## QUESTIONS

The questions in this appeal can be narrowed down to four. First, was the evidence properly before the trial judge and was it sufficient to sustain the granting of the motion for summary judgment? Second, did the events that took place constitute either a breach of a fiduciary duty or actionable fraud? Third, can Gibraltar be bound by the acts of its agent Smith? Fourth, what is the amount of damages to which Grosso is entitled?

## THE LAW

■ A motion for summary judgment shall be granted if "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law * * *." Rule 56(c), Rules of Civil Procedure, 16 A.R.S.; Kadish v. Kallof, 3 Ariz.App. 344, 414 P.2d 193 (1966). It is to be remembered that the evidence must be viewed in a light most favorable to the party opposing the motion. Welker v. Kennecott Copper Company, 1 Ariz. App. 395, 403 P.2d 330 (1965).

■ The deposition of the agent Smith was properly used by the court as to not only what took place but also to establishing his agency. While it is true that an agent's statements generally cannot be used to establish his position as agent, they are admissible for such purposes at a trial on the merits of the cause. Daly v. Williams, 78 Ariz. 382, 280 P.2d 701 (1955). The Rules of Civil Procedure, 16 A.R.S., state in part:

"Rule 26(d) Use of depositions. At the trial or *upon the hearing of a motion* * * * any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due

notice thereof, in accordance with any one of the following provisions:

\* \* \* \* \* \*

"2. The deposition of a party \* \* \* may be used by an adverse party for any purpose." (Emphasis supplied)

In Moore's Federal Practice, Vol. 6, § 56.02 [a] at page 2041:

"If there is to be a trial, Rule 43(a) contemplates a live trial with witnesses ordinarily present in open court and subject to observation and cross-examination. To that end the use of depositions at trial is considerably restricted. But since the function of summary judgment procedure is not to try disputed facts, but to determine whether there are genuine issues of material fact to be tried, Rule 56 authorizes the use of depositions both in support of and in opposition to a motion for summary judgment."

See also Moore's Federal Practice, Vol. 6, § 56.11, at page 2146:

"Testimony that is admissible in evidence, i. e., is competent, relevant, and material, which is contained in depositions taken either upon oral examination under Rule 30 or upon written interrogatories under Rule 30 or upon written interrogatories under Rule 31 may be used in support of or in opposition to a motion for summary judgment."

Rule 26(d) (2) and the statements in Moore's Federal Practice permit the use of the deposition in the motion for summary judgment in question.

■ Since Smith was no longer employed by Gibraltar, his deposition could not be considered an admission of Gibraltar. It could, however, be presented as other evidence.

■ Both parties in their briefs discuss the existence of a fiduciary duty. Grosso claims a fiduciary duty on the part of Gibraltar arose when the supplemental escrow instructions were executed. In the case of Young v. Bishop, 88 Ariz. 140, 146, 353 P.2d 1017, 1021 (1960), our Supreme Court defined the word "escrow" as follows:

"[A]n escrow is a written instrument which by its terms imports a legal obligation, and which is deposited with a third party, to be kept by the depository until the performance of the prescribed condition or the happening of a certain event, and then to be delivered over to the grantee, promisee, or obligee."

This would seem to fit the present case even though we are dealing with supplemental escrow instructions. A failure on the part of the defendant to follow these instructions constitutes a breach of its fiduciary duty and makes it liable for the resulting damages. Tucson Title Insurance Company v. D'Ascoli, 94 Ariz. 230, 383 P.2d 119 (1963).

■ This appeal can be disposed of on the basis of fraud as well as breach of the fiduciary duty. The nine elements of fraud are:

"(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury."

Moore v. Meyers, 31 Ariz. 347, 253 P. 626 (1927); Higgins v. Kittleson, 1 Ariz.App. 244, 401 P.2d 412 (1965); Nielson v. Flashberg, Ariz., 419 P.2d 514 (1966). All of the elements are present in the case before us.

■ The only elements that raise any question are Grosso's reliance and its right to rely. Smith's position of general manager and the duties which he performed in that capacity were sufficient to cause and permit Grosso to rely. It is urged that the procedure of a third party depositing money under a supplemental escrow instruction is not an ordinary custom and practice. This contention can be met by saying that Gibraltar would not have permitted this transaction to go through its office and trust account unless it contemplated this kind of

business. There is no better evidence that Grosso relied than the uncontroverted fact that it paid $20,000 to Gibraltar.

Since fraud is clearly provable under the facts, we will not discuss the effect of Gibraltar's admission in its answer "that the fraud * * * was committed in Phoenix, Arizona".

■ If Gibraltar is to be bound at all by the act of Smith, it must be bound under the theory of apparent authority. This is so since it is obvious that the wrongful acts of Smith were neither expressly nor impliedly authorized. Gibraltar cites as authority for its position that Smith's acts were not authorized the leading Arizona case of Brutinel v. Nygren, 17 Ariz. 491, 154 P. 1042 (1960), and Lois Grunow Memorial Clinic v. Davis, 49 Ariz. 277, 66 P. 2d 238 (1937).

In *Brutinel,* the owner of a drug store authorized the store's general manager to find a purchaser for the store to buy on terms satisfactory to the owner. The general manager employed the plaintiff to find a purchaser, which the plaintiff did. Plaintiff then sued the owner for his commission on the sale. The court, finding that the manager's authority was limited, held that it could not imply authority to act as the manager did. We agree there was no question as to the agent's lack of authority; the manager of a drug store could not be found to have authority to negotiate a sale of the store. The court in *Brutinel* did, however, recognize that a principal could be bound by the unauthorized acts of the agent as is evidenced by its statement on page 498 of 17 Ariz., page 1045 of 154 P.

"So far as the authority of an agent involves the rights of innocent third persons, who have relied upon the character bestowed upon the agent, the principal is bound equally by the authority which he actually gives and by that which by his own act he appears to give, and this is true, whether we call the agency a special or general one."

In *Grunow* the defendant corporation, in a resolution, authorized its general manager

to lease space in its clinic. In so doing, the general manager guaranteed to the plaintiff a minimum income of $12,000 a year for two years. Here the court recognized apparent authority but said that it is limited and governed by the character of the business in which the corporation is engaged. Plaintiff had extensive correspondence with the agent, who had expressed doubts as to his authority. Also, plaintiff had visited the clinic and knew it was set up to furnish space and not to guarantee income. The court said that these facts should have caused the plaintiff to investigate.

■ The case before us differs considerably from both *Brutinel* and *Grunow.* Smith was given sole responsibility for the management of the office. The transaction involving the supplemental instructions was to, and did, go through the Gibraltar office, and money was ultimately paid out of Gibraltar's trust account. The following quotations are from the Restatement of the Law of Agency 2d:

Section 257:

"*Misrepresentation; in General.*

"A principal is subject to liability for loss caused to another by the other's reliance upon a tortious representation of a servant or other agent, if the representation is:

  (a) authorized;

  (b) apparently authorized; or

  (c) within the power of the agent to make for the principal."

Section 271:

"*Agent's Position Enables Him to Deceive.*

"A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud."

Section 262:

"*Agent Acts for His Own Purposes.*

"A person who otherwise would be liable to another for the misrepresentations of

one apparently acting for him is not relieved from liability by the fact that the servant or other agent acts entirely for his own purposes, unless the other has notice of this."

We concur with the above stated propositions of law and hold Gibraltar bound by the acts of its agent, Smith.

■ The affidavit opposing Grosso's motion for summary judgment was of no more effect than the denials contained in Gibraltar's answer. This, by itself, will not create a "genuine issue as to any material fact". The defendant's affidavit should have shown something in support of the denial. Wakeham v. Omega Construction Co., 96 Ariz. 336, 395 P.2d 613 (1964).

■ In the case of Tucson Title Insurance Company v. D'Ascoli, where there was a breach of fiduciary duty in not strictly complying with the escrow instructions, the court stated:

"It follows that the jury was justified in finding a violation of the conditions of the escrow agreement and in assessing the damages in a sum equal to that deposited in escrow."

Basing the defendant's liability upon either the breach of fiduciary duty or upon fraud, it is our opinion that Grosso's recovery should be measured by the amount of its payment. We are aware that the measure of damages for fraud in Arizona is the benefit of the bargain. Lufty v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 115 P.2d 161 (1941). In our opinion, this legal principle would apply to Grosso's claim against Webb but not against Gibraltar.

## CONCLUSION

We now hold that the evidence was properly before the trial judge and was sufficient to sustain the granting of the motion for summary judgment; that the events that took place constitute both a breach of fiduciary duty and actionable fraud; that Gibraltar is bound by the acts of its agent Smith; and that Grosso is entitled to the return of its $20,000.

The judgment of the trial court is amended to allow a recovery of $20,000 in place of the $22,000 therein awarded, the same to bear interest at the rate of 6% per annum from 13 November 1962. As modified, the judgment is affirmed. This cause is remanded with instructions to modify the judgment in conformity with this opinion.

CAMERON, J., and J. SMITH GIBBONS, Superior Court Judge, concur.

NOTE: Judge FRANCIS J. DONOFRIO having requested that he be relieved from the consideration of this matter, Judge J. SMITH GIBBONS of the Superior Court was called to sit in his stead and participate in the determination of this cause.