739 P.2d 803

Michael M. MILLER, E.L. "Al" Faber and Faber Brothers Construction Co., an Arizona general partnership, Plaintiffs/Appellants/Cross-Appellees,

v.

MASON–McDUFFIE COMPANY OF SOUTHERN CALIFORNIA, a California corporation, Defendant/Appellee/Cross-Appellant.

No. 2 CA–CIV 5653.

Court of Appeals of Arizona, Division 2, Department A.

April 14, 1986.

Kaufman, Apker & Nearhood, P.C. by Robert P. Kaufman and Kathleen M. Pierce, Phoenix and Clair William Lane, Ltd. by Clair W. Lane, Tempe, for plaintiffs/appellants/cross-appellees.

Meyer, Hendricks, Victor, Osborn & Maledon, P.A. by Andrew D. Hurwitz and Earl, Baird & Williams by Daryl M. Williams, Phoenix, for defendant/appellee/cross-appellant.

## OPINION

FERNANDEZ, Judge.

Appellants Miller, Faber and Faber Brothers Construction Co. (hereafter "Miller") seek reversal of the judgment entered against them upon a jury verdict. They contend that the trial court improperly instructed the jury as to the elements of the case. Appellee Mason-McDuffie Company of Southern California (hereafter "Mason-McDuffie") has cross-appealed regarding the proper measure of damages to be applied in the event a new trial is granted. Since we affirm the judgment below, we need not address the issues raised on cross-appeal.

Miller filed its complaint in October 1982 naming as defendants appellee and a similarly-named but unrelated entity, Mason-McDuffie Investment Co. of Southern California (hereafter "Investment Co."). Investment Co. was never served and was dismissed from the action in the final judgment. The complaint alleged three counts: fraud, breach of contract and racketeering. The racketeering count was dismissed by a summary judgment entered in 1984. At the close of evidence at trial, Miller elected to pursue the fraud claim and to dismiss the contract claim. The jury returned a verdict in favor of Mason-McDuffie.

Miller was the developer of a 120-unit condominium project in Tempe and, in the fall of 1981, had obtained a construction loan commitment from United Bank. The bank would not fund the loan until a commitment for permanent financing had been obtained. Michael Miller was given the name of Dennis O'Keeffe, an assistant vice-president and manager at the San Die-go office of Mason-McDuffie, a national mortgage banking institution. Miller telephoned O'Keeffe in San Diego and they discussed the project. O'Keeffe told him he had no authority to approve permanent financing, that he was required to submit applications for financing to a loan committee. Thereafter, Miller's mortgage broker, Don DeSanti, negotiated by telephone with O'Keeffe for a permanent financing commitment. All further dealings were between DeSanti and O'Keeffe.

In early October 1981 O'Keeffe sent Miller a loan commitment for $1.8 million. The commitment was typed on Mason-McDuffie letterhead but stated it was from Investment Co. It contained a number of typographical errors, and there was testimony at trial that the paragraph providing for determination of the interest rate made no sense because it referred to a non-existent auction by Federal Home Loan Mortgage Corporation. O'Keeffe traveled to Phoenix to present the commitment and met with appellant Faber and DeSanti at a restaurant. In the restaurant parking lot, Faber gave O'Keeffe a $36,000 check for the commitment fee. DeSanti also testified that he had discussed another project with O'Keeffe and O'Keeffe had suggested that the agreement be drafted to show payment of a commission to his wife.

Construction began on the condominium project. In early November, after Miller had attempted to set up the processing of loan applications for individual units through Mason-McDuffie's Phoenix office (which DeSanti testified he had not previously known existed), Mason-McDuffie notified Miller that the permanent commitment it had obtained from O'Keeffe was a forgery. It was then learned that Mason-McDuffie had rejected Miller's request for a permanent commitment in mid-1981, but O'Keeffe had not informed Miller of that rejection. He had instead sent Miller the forged commitment which stated it was from Investment Co., a sole proprietorship he had established. O'Keeffe deposited the $36,000 commitment fee in a bank account in Investment Co.'s name. Apparently he

handled several other applications to Mason-McDuffie in the same manner.

Mason-McDuffie informed Miller that it would not honor the fraudulent commitment and offered its own commitment in late December 1981. The offer was rejected because it did not meet Miller's requirements and Miller spent several months attempting to obtain a commitment elsewhere. Alternate financing was obtained in August 1982. Because of the delay, the construction project shut down for several months. It was finally completed in late 1983 at a substantial loss instead of the substantial profit which had been projected in the beginning. Miller sued Mason-McDuffie for its lost profits, claiming that they resulted from the delays and difficulties caused by O'Keeffe's fraudulent commitment.

Miller contends that the trial court committed reversible error by instructing the jury that it must find a "concert of action" between O'Keeffe and Mason-McDuffie before it could hold Mason-McDuffie liable for O'Keeffe's fraud.

█ Initially we note that Miller did not allege that Mason-McDuffie was aware of O'Keeffe's activities. There is no contention that Miller dealt with anyone at Mason-McDuffie but O'Keeffe before the fraudulent commitment was issued. Miller sought to hold Mason-McDuffie liable under agency theories; however, Miller did not allege that O'Keeffe was expressly authorized to act as he did and the case was submitted to the jury under the theory of apparent authority. See *Carrel v. Lux,* 101 Ariz. 430, 420 P.2d 564 (1966); Restatement (Second) of Agency § 257 (1957). Under that theory, "[a] representation is apparently authorized if the third party to a transaction reasonably believes *from conduct for which the principal is responsible* that the agent is authorized to make the representations as made." (Emphasis added.) *Jerger v. Rubin,* 106 Ariz. 114, 119, 471 P.2d 726, 731 (1970); Restatement (Second) of Agency § 257 comment a (1957).

The jury instructions about which Miller complains read as follows:

"[No. 12:] An employer is subject to liability for loss caused to another by the other's reliance upon the tortious or fraudulent representations of an employee only if you find that the representation is:

(a) authorized;

(b) apparently authorized; or

(c) was [sic] within the power of the employee to make for the employer.

In this case, there is no evidence that Dennis O'Keeffe had express authority, or that the contract was within his power to finalize on behalf of the defendant employer. The only issue before you is whether or not Dennis O'Keeffe acted with apparent authority and in concert with his employer, the Mason-McDuffie Co. of Southern California."

"[No. 25:] Before a corporation can be liable for the fraud of one of its employees the plaintiff must show that there was a concert of action between the employee and the corporation. That is, the corporation must have worked with the employee to defraud the victim."

"[No. 26:] It is not enough to show Dennis J. O'Keeffe made false and fraudulent representations to the plaintiffs. The requirement that there be a concert of action means that Mason-McDuffie Co. of Southern California must have been either working actively with O'Keeffe or must have had a knowledge or reasonable ground for believing that O'Keeffe was doing what he was doing and that the plaintiffs were relying thereon and changing their position for the worse."

The basis for the phrase "concert of action" in instruction Nos. 25 and 26 was language that appears in two Arizona agency cases. *Leigh v. Swartz,* 74 Ariz. 108, 245 P.2d 262 (1952); *Pearll v. Selective Life Insurance Co.,* 8 Ariz.App. 152, 444 P.2d 443 (1968). The court in *Leigh* held that "[f]or the principal to be bound there must be a concert of action which is not shown in the instant case." 74 Ariz. at 116, 245 P.2d at 267. In *Pearll,* this court repeated that language. Neither opinion further defined the phrase.

Miller contends the language is not applicable to this case because the facts are different. While neither *Leigh* nor *Pearll* involved an employer-employee relationship, both cases considered independent fraudulent representations by an agent. The fact that O'Keeffe was Mason-McDuffie's employee does not relieve Miller from showing conduct towards Miller for which Mason-McDuffie was responsible under the theory of apparent authority. Although the jury instructions may have imposed a heavier burden on Miller than the law actually requires, it is clear from the record that Miller was unable to produce any evidence of conduct on the part of Mason-McDuffie which would support a finding of apparent authority. We disapprove of the instruction insofar as the "concert of action" language is concerned but find that because of the lack of evidence it was harmless in this case. *Walters v. First Federal Savings and Loan Association of Phoenix*, 131 Ariz. 321, 641 P.2d 235 (1982). Jury instructions are to be considered as a whole. *Kauffman v. Schroeder*, 116 Ariz. 104, 568 P.2d 411 (1977). The test is whether, after a review of all the instructions, "the jury will gather the proper rules to be applied in arriving at the correct decision." 116 Ariz. 106, 568 P.2d at 413. We believe the entire charge given here was sufficient to apprise the jury of the proper rules it was to apply.

Miller contends this case is like *Gibraltar Escrow Co. v. Thomas J. Grosso Investment, Inc.*, 4 Ariz.App. 490, 421 P.2d 923 (1966), in which an escrow company was held liable for the wrongful independent acts of its general manager. *Gibraltar Escrow* was decided on a summary judgment after evidence that the agent had substantial actual authority to manage the office although he had only apparent authority for the wrongful acts. There was no issue involving proper jury instructions in that case.

Miller also complains about two jury instructions which informed the jury that it could not consider O'Keeffe's statements and acts to determine the nature and extent of his authority as Mason-McDuffie's agent. Miller concedes there was no objection to the instructions and thus no compliance with Rule 51(a), Rules of Civil Procedure, 16 A.R.S. Appellants assert, however, that the instructions were an impermissible comment on the evidence rising to the level of fundamental error. We disagree. Those instructions merely stated the rules of agency that apply in Arizona. *United States Smelting, Refining & Mining Exploration Co. v. Wallapai Mining & Development Co.*, 27 Ariz. 126, 230 P. 1109 (1924); *Phoenix Western Holding Corp. v. Gleeson*, 18 Ariz.App. 60, 500 P.2d 320 (1972).

Finally, Miller assigns as error an instruction as to the time period for which the jury could award damages for lost profits. Since we have found no reversible error in the agency instructions that were given, any issue as to an instruction on the award of damages is moot.

The judgment is affirmed.

HATHAWAY, C.J., and HOWARD, P.J., concur.