[Civil No. 3705.   Filed October 13, 1936.]

[61 Pac. (2d) 401.]

GORDON CHESTER HIATT and DORIS MAE HIATT, Minors, by JAMES F. McMANIS, Their Guardian Ad Litem, Appellants, v. MAMIE HIATT LEE, Administratrix of the Estate of EDWARD FAY HIATT, Deceased, Appellee.

Mr. Walter D. Moore, for Appellants.

Mr. Elias M. Romley, for Appellee.

LOCKWOOD, C. J.—This is an appeal from an order of the superior court of Gila county, denying a petition for an order setting aside the appointment of an administratrix. The sole question involved on the appeal is whether the evidence is sufficient to sustain the finding of the trial court that at the time of his death Edward Fay Hiatt, hereinafter called deceased, was a resident of the state of Arizona.

The undisputed facts are as follows: Deceased came to Gila county, Arizona, in the company of his parents when he was a child of about six. In the year 1917 he enlisted in the United States Army, and after his discharge from the service returned to Globe, and there married Adaline Greenough; two children, Gordon Chester Hiatt and Doris Mae Hiatt being the offspring of said marriage. From that time until early in the year 1923 he unquestionably resided in Globe, Arizona, although as he was in the mining business he traveled extensively throughout the country. During practically all the time after his discharge from the service of the United States, he was in failing health and suffered from endocarditis. The disease progressed and early in 1923 he was sent by the United States government to the Fitzsimmons General Hospital in Denver, Colorado. He remained

there for a considerable period, and in 1924 was transferred by the government to the hospital in Sawtelle, California, remaining there until August or September, 1925. He was then discharged from the hospital, but had not been cured, and continued to receive medical attention until the time of his death. In August, 1925, he wrote the Regional Medical Officer of the United States Veterans' Bureau, in Los Angeles, that his permanent address from that date would be 1639 W. 51st Street, Los Angeles, California, and on November 25th of the same year he notified the Veterans' Bureau that his new address would be 533 South Manhattan Street, Los Angeles, California. On January 6, 1926, he registered in Los Angeles county. His registration certificate states, in part, as follows:

"State of California } ss.
County of Los Angeles,}

"Affidavit of Registration.

"The undersigned affiant, being duly sworn, says: I will be at least twenty-one years of age at the time of the next succeeding election, a citizen of the United States ninety days prior thereto, and a resident of the State one year, of the County ninety days, and of the Precinct thirty days next preceding such election, and will be an elector of this County at the next succeeding election. . . .

"2. My full name is Edward F. Hiatt.

"3. My residence is 1639 West 51st Street, North side, between Denker and Western Streets. Post office address at 1639 West 51st Street."

He died in Los Angeles on April 12, 1926. In addition to the foregoing undisputed facts, there appear in the record several depositions and the oral testimony of a number of witnesses, some of the witnesses stating, in substance, that deceased was temporarily in California for the benefit of his health

and that at all times he expressed a fixed intention and desire of returning to Arizona as soon as his health would permit, while others insisted that, according to his own statements, he had taken up a permanent residence in California and expected to remain there.

█ The question before us is whether, on the foregoing evidence, the trial court was justified in finding that at the time of his death he was still a resident of Arizona. Section 1216, Revised Code of 1928, gives certain rules for determining residence, and while these rules apply specifically only to voters, yet we think they also set forth the general rule for determining residence whenever that may be an issue. These rules, so far as applicable to the present case read as follows:

"1. That place is the residence of a person wherein his habitation is fixed, and to which whenever he is absent, he has the intention of returning; . . . 3. a person does not lose his residence who leaves his home to go to another county or state or foreign country for temporary purposes merely, with the intention of returning; . . . 5. if a person removes to another state with the intention of making it his residence, he loses his residence in this state; 6. if a person removes to another state with the intention of remaining there for an indefinite time, and as a place of present residence, he loses his residence in this state, notwithstanding he entertains an intention of returning at some future period; . . . 9. the mere intention to acquire a new residence without the act of removal avails nothing; neither does the act of removal without the intention."

The question before us has arisen repeatedly in other states and various situations have been passed on by the courts. In most states it is held that temporary residence, merely for the sake of ill health, does not necessarily nor even usually change one's

domicile, even though the actual time spent in the new residence may be long. Restatement Conflict of Laws, § 22; 19 C. J. 408; 9 R. C. L. 554. The case of *Pickering* v. *Winch,* 48 Or. 500, 87 Pac. 763, 767, 9 L. R. A. (N. S.) 1159, is enlightening. The question there, as here, arose in probate proceedings, where it was of vital importance to determine the domicile of the deceased. It appeared a domicile had been regularly established and maintained many years in the state of .Oregon, but that the husband and wife removed to the state of California for reasons of health, where the former died. It was held that notwithstanding the fact that he had actually lived in the state of California for three years, since all the circumstances showed he was merely there for the sake of his health, with a fixed intention of returning when possible to Oregon, he had not lost his residence in that state. The court said:

"The residence of Mr. and Mrs. Reed at Pasadena admittedly was for health and pleasure, and not business. It was, therefore, not of that permanent commercial or business character which will in law constitute a change of domicile regardless of the intention of the parties. Nor was it of such a character as will overcome the presumption that their former domicile at Portland continued. We must, therefore, look to the evidence to ascertain whether in fact they intended to abandon their Portland domicile and acquire a new one in California, and in doing so it is important to bear in mind their situation at the time of their removal, the causes which prompted it, its purpose and the place to which they removed."

Applying these rules to the facts as shown by the evidence, and construing that evidence in the strongest manner possible in favor of the finding of the trial court, as under our oft-repeated rule we must construe *it,* can we say affirmatively that there was no reasonable evidence to support that finding? It

is undisputed that up to 1923 deceased was domiciled in Gila county, Arizona; it is undisputed that the only reason he went to California in the first place was on account of his health, but as to his intentions when he went there in regard to the taking up of a permanent residence the evidence is in sharp dispute. One group of witnesses says he repeatedly expressed his intention of returning to Arizona and stated that his California residence was temporary only. The other insists, with equal vehemence, that he intended to make that residence a permanent one. The credibility of these witnesses and the weight, effect, and sufficiency of their testimony was for the trial court, and were this all the evidence, we should unhesitatingly sustain its findings. Indeed, the appellants do not seriously contend that this would not be correct; they base their claim that the evidence is not sufficient, partly on the written statements of the deceased in regard to his change of address, but particularly upon his registration, wherein he stated under oath that he was at that time a resident of the state of California. So far as the change of address is concerned, we think his statements on this point were not necessarily conclusive that he intended to take up a permanent residence in California and abandon his domicile in Arizona. A representative of the Veterans' Bureau testified that these statements were formal ones required for the records of the bureau, so that it could keep track of those veterans who were under hospitalization and who were entitled to compensation from the government. Such being the case, it would be but natural that even though deceased did definitely intend to maintain his domicile in Arizona, he would give his address at the time as in California, for in his physical condition he, of course, did not know when he would be able to resume an actual physical residence in Globe. The

question of the affidavit of registration is more difficult, for in it he definitely, positively, and categorically states that he is a resident of the state of California and has been for some time past, and if what he states there be true, he could not have retained his residence in Arizona.

But, it is urged, registration in a given state or even the voting therein, is not conclusive evidence upon the point of domicile. This rule is sustained by a practically unanimous line of authorities. *Quinn* v. *Neville,* 7 Cal. App. 231, 93 Pac. 1055; *Bradley* v. *Davis,* 156 Cal. 267, 104 Pac. 302; *Easterly* v. *Goodwin,* 35 Conn. (279), 285, 95 Am. Dec. 237; *Smith* v. *Croom,* 7 Fla. 81; *Hewes* v. *Baxter,* 48 La. Ann. 1303, 20 So. 701, (36 L. R. A. 531); *Clarke* v. *Territory,* 1 Wash. T. 68; *East Livermore* v. *Farmington,* 74 Me. 154, 155.

It is true that it would seem to the ordinary mind that the only reason why such an affidavit was not conclusive on the question of evidence is that affiant either did not know that he was making oath that he was a resident of the state where he registered, or that he deliberately perjured himself. The first alternative would require a degree of stupidity far beyond the ordinary, while the second would, of course, show a deliberate intention to commit a felony. Yet either may possibly be true, for we know such things have happened, and apparently the trial court must have believed in this case one of them was true. We cannot say, in view of all the authorities, that it was not authorized to reach the conclusion that deceased was a resident of Arizona at the time of his death, and if such be the case, there was evidence to sustain the order.

There are two other points raised by the assignments of error. One is that the court erred in excluding testimony of certain witnesses. Apparently

this was done on the theory that the proper foundation had not been laid for the questions. We think, after a careful examination of the reporter's transcript, either that the foundation had not been properly laid, or else that the witness had answered the question in substance in another part of his examination. We see no reversible error in these rulings.

█ The other assignments are based on alleged erroneous admission of evidence. This court has held repeatedly that when a case is tried to the court, and not to a jury, even though evidence be erroneously admitted, if, after disregarding such evidence, there remains sufficient legal evidence in the record to sustain the judgment of the trial court, we will assume that in reaching its conclusion it did not consider the erroneous evidence. *Cooper* v. *Francis,* 36 Ariz. 273, 280, 285 Pac. 271. We think it unnecessary to go into detail as to the other assignments of error, as they are covered substantially by what we have already said.

For the foregoing reasons, the order appealed from is affirmed.

McALISTER and ROSS, JJ., concur.