**241 P.2d 801**

**McINTOSH v. MARICOPA COUNTY et al.**

**No. 5398.**

Supreme Court of Arizona.

March 17, 1952.

Rehearing Denied April 22, 1952.

Warren L. McCarthy, County Atty., Anthony O. Jones, Deputy County Atty., and Harry A. Stewart, Jr., Deputy County Atty., all of Phoenix, for appellees.

DE CONCINI, Justice.

Clark F. McIntosh, plaintiff below, appeals from the order of the trial court granting summary judgment in favor of defendants Maricopa County Assessor, et al. At issue is whether appellant was a resident of Arizona, within the purview of the Arizona Constitution, Article 9, section 2, as amended, before September 1, 1945. If he was, then he is entitled to the property tax exemption granted to ex-servicemen by the above section.

Appellant's motion for summary judgment was supported by an affidavit alleging the following facts: On December 17, 1942, appellant and his wife were residents of the state of Wyoming, and on this date he left that state to enter the military service. Four months later he was sent overseas.

In March, 1945, appellant's wife was advised by her doctor that the climate of Arizona would be beneficial to her health, and she and their infant son came to this state. This contemplated change was made after the appellant and his wife had written each other concerning it, and their intention was that they would thereby perfect a change of domicile to Arizona. The mother of appellant's wife came with the

Jennings, Strouss, Salmon & Trask and Henry S. Stevens, all of Phoenix, for appellant.

family, and she purchased a home here. It was to this address that appellant came after his discharge from military service on November 27, 1945.

Appellant made a timely application for the tax exemption for the year 1950. He was denied the privilege of filing the affidavit, because he was not a bona fide resident of the state of Arizona prior to September 1, 1945.

Appellees did not controvert the facts. The matter was submitted for a declaratory judgment to determine whether appellant was a resident of the state on or before the crucial date. Judgment was rendered in favor of Maricopa County et al. appellees, from which plaintiff appeals.

Appellant's assignment of error is that it was not necessary for him to have been physicially present in the state prior to the date provided by law, since he was unable to be here by reason of his military service coupled with the fact that his wife and child came here with his consent and intention that this would be their home.

Article 9, section 2, supra, as amended, provides in part: " * * * There shall be further exempt from taxation the property of widows, honorably discharged soldiers, sailors, United States marines, members of revenue marine service, nurse corps, or of the components of auxiliaries of any thereof, residents of this state, not exceeding the amount of two thousand dollars [$2,000.00], where the total assessment of such widow and such other persons named herein does not exceed $5,000.-00; provided, that no such exemption shall be made for such persons other than widows unless they shall have served at least sixty [60] days in the military or naval service of the United States during time of war, *and shall have been residents of this state prior to September 1, 1945. * * *"* (Emp. Supp.) It is this underlined portion with which we are concerned.

Appellant has raised the question of distinction in his supplementary brief between "resident" and "domicile". We believe that a brief discussion on this point is of importance to this case. It is axiomatic that there is a technical difference in the meaning of the two words. It is often said that a person may have several "residences" but only one "domicile". " * * * 'Domicile' is a larger term, of more extensive signification, and has been said to be used more in reference to personal rights, duties, and obligations; and residence is of a more temporary character than domicile. * * *" 28 C.J.S., Domicile, § 2a, page 5.

At no place in the Arizona Constitution is "domicile" used, but rather "residence" or "resident" has been employed exclusively. In Pima County v. Weddle, 54 Ariz. 525, 97 P.2d 531, 532, this court speaking of Article 9, section 2, supra, said: " * * We will not enter upon a discussion of the meaning of the word 'residents' for if we

should hold that it, in the context in which it is used, is the equivalent of domicile, we think the facts stipulated show Weddle was a bona fide resident of the state before January 1, 1927 and at the time thereafter when he claims the exemption."

It is clear that the word resident is equivalent to domicile, even though not distinctly spelled out in the Weddle case.

28 C.J.S., Domicile, § 2b, page 7, provides: "Whether the term 'residence,' as used in a statute, will be construed as having the meaning of 'domicile,' or the term 'domicile' construed as 'residence,' depends on the purpose of the statute and the nature of the subject matter, as well as the context in which the term is used. * * * and that whenever the terms are used in connection with subjects of domestic policy, the terms are equivalent, as they also are, generally, where a statute prescribes residence as a qualification for the enjoyment of a privilege, or the exercise of a franchise; * * *."

After an examination of the context and the purpose of this provision, we have no hesitancy in holding that the word "residents" as used in Article 9, section 2, supra, is synonomous with "domicile".

The question now is whether as a matter of law, appellant had become *domiciled* in Arizona on or before September 1, 1945. To support his contention appellant cites Hiatt v. Lee, 48 Ariz. 320, 61 P.2d 401, 402, 107 A.L.R. 444, wherein we said:

"* * * Section 1216, (sec. 55–512, A. C.A.1939) * * * gives certain rules for determining residence, and while these rules apply specifically only to voters, yet we think they also set forth the general rule for determining residence whenever that may be an issue. * * *"
and section 55–512, A.C.A.1939, which reads:

"7. The place where a man's family permanently resides is his residence, unless he be separated therefrom, * * *."

Appellant contends that as a result of the Hiatt case, supra, and section 55–512(7), there is a presumption that the husband is a resident where the family resides.

We do not believe the above section applicable, since in this case the facts show that he was separated from his family when they moved to Arizona.

In the recent case of Clark v. Clark, 71 Ariz. 194, 225 P.2d 486, in passing on whether a soldier could acquire a domicile in Arizona, so as to be a "bona fide resident" within the meaning of section 27–803, A.C.A.1939, we held that the provisions of Article 7, sections 3 and 6 of the Arizona Constitution did not prevent a serviceman from acquiring a domicile in Arizona. It is important to note, however, that in the Clark case the soldier was physically present in this jurisdiction with the requisite intention.

The authorities are unanimous that two elements must concur in point of time,

before a person can select and establish a domicile of choice. As said in 28 C.J.S., Domicile, § 9, page 11: "Domicile of choice is entirely a question of residence and intention, or, as it is frequently put, of factum and animus. To constitute such a domicile, or to effect a change of domicile, there must appear both an actual residence in a particular locality and an intention to remain there or to make it one's home, * * *. As soon as a point of time is reached when residence and intent concur, the domicile is obtained. * * *"

The only case of which we are aware that supports appellant's contention is Bangs v. Inhabitants of Brewster, 1873, 111 Mass. 382. At issue was whether Bangs, a ship captain had changed his domicile from Brewster, Massachusetts, to Orleans. Bangs had returned from a voyage to find that his father was dead and the family home had burned. Thereafter, he became acquainted with a girl in Orleans, visited there, and later married her. In November, 1867 they both left on a voyage and he sent her back to Orleans where she arrived during February, 1869. The court held that he was domiciled in Orleans thereafter, saying: "By sending his wife to Orleans with the intent to make it his home, he thereby changed his domicil. The fact of removal and intent concurred. Although he was not personally present, he established his home there from the time of his wife's arrival. * * *"

Joseph H. Beale, in The Conflict of Laws, vol. 1, sec. 16.4, page 139, with regard to this situation states: "A husband may not acquire a new domicil if without going to the new home he sends his wife and family to take possession. It has been so held in a case where the husband could not go himself, being at the time in the army; while another case (Bangs v. Brewster) has held the contrary, where the husband was absent at sea. If the latter case could be supported, it must be on the ground of the legal identity of person of husband and wife; but with the vanishing of this fictitious identity no reason remains for following it, and the Kansas decision must be accepted as a sounder statement of the law, in view of the fact that actual presence is always considered an independent element. * * *"

The above seems to us to be a sound analysis of the Bangs case. Furthermore in that case Bangs had been in Orleans numerous times before he sent his wife there.

The Kansas case, supra, Hart v. Horn, 4 Kan. 232, holds contra in an analogous situation:

"Had the defendant accompanied his wife and children to Kansas, and remained there, though for ever so short a time, if long enough to establish them in a new home, even though such new home had been a boarding place in the house of relatives, then indeed the intent might have

been effectual in giving character and significance to the act.

"But we cannot think that the intent of the husband to follow his family to Kansas at some future time had the effect of giving him a legal residence in this state, months before he had set foot upon her soil. *Intents and purposes are subject to change, and are seldom to be taken as the equivalent of substantial deeds.*" (Emp. Supp.)

We think this emphasized portion is a correct statement of the law and also the reason why such is almost the universal rule. See also Porterfield v. City of Augusta, 67 Me. 556.

We have carefully examined the various cases cited by appellant and find they are either distinguishable or not in point. In the Restatement of Conflict of Laws, § 16, page 34, appears the following:

"To acquire a domicil of choice in a place, a person must be physically present there; but a home in a particular build-ing is not necessary for the acquisition of a domicil.

\* \* \* \* . \* \*

"Illustration: 2. A, while absent from the country, desires to acquire a new home, and sends his wife to take possession of the new dwelling-house. A's domicil is not changed."

We hold that appellant did not become domiciled in Arizona as a result of sending his family here, even though he had that intention. His intention and presence must concur in point of time while in the jurisdiction which he elects to make his domicile of choice. Even though he intended to abandon his domicile in Wyoming, he could not as a matter of law do so until he had perfected a change. Restatement of Conflict of Laws, § 23, page 47.

Judgment affirmed.

UDALL, C. J., and STANFORD, PHELPS and LA PRADE, JJ., concur.