In re INGERSOL'S ESTATE.
McFADDEN, Appellant, v. DUDLEY, Respondent.
No. 9299.
Submitted May 20, 1954. Decided July 16, 1954.
272 Pac. (2d) 1003.

Mr. Donald J. Smith, Dillon, for appellant.

Mr. Robert J. Webb, Virginia City, for respondent.

Mr. Smith and Mr. Webb argued orally.

MR. JUSTICE ANDERSON:

George W. Ingersol died intestate on January 3, 1953. At the time of his death he was a patient at a rest home in Madison County, Montana, where he had been admitted on September 17, 1952.

Prior to going to the rest home in Madison County, the deceased had been a resident of Beaverhead County for many years and had been a recipient of welfare assistance in that county.

On January 7, 1953, both the public administrator of Madison and Beaverhead Counties filed petitions, in their respective counties, for letters of administration of the decedent's estate. After a hearing to determine who should administer the estate, the district judge held that the decedent was a resident of Madison County at the time of his death and accordingly letters for administration were granted to the public administrator of that county.

This court in a recent case, In re Minder's Estate, 128 Mont., 1, 270 Pac. (2d) 404, 418, said, quoting from In re Wilcox' Estate, 122 Mont. 290, 201 Pac. (2d) 989, " 'The statutory right to administer an estate is a valuable right and one that may be enforced.' "

Respondent contends that In re Esterly's Estate, 97 Mont. 206, 34 Pac. (2d) 539, is applicable here in that the administration of the estate should not be changed at this time. The Esterly Case arose under completely different circumstances and is not in point. Here both interested persons made a simultaneous effort to become administratrix and an appeal from an order determining the point was immediate and what may have been done under the grant of letters by way of administration was done subject to the appeal and at the appointed administratrix' peril.

R. C. M. 1947, sec. 91-701, provides: "Wills must be proved, and letters testamentary or of administration granted: 1. In the county in which the decedent was a resident at the time of his death, in whatever place he may have died * * *."

Identical statutes have been interpreted by the courts and quoting from 1 Bancroft's Probate Practice, 2d Ed., sec. 34, p. 91: "The purport of all the statutes is plain that in the event of administration upon the estate of one who died a resident of the state, the venue of the proceedings shall be the county in which he resided at the time of his death."

: It is undisputed that the decedent here was a long time resident of and domiciled in Beaverhead County. If there is any basis in the record for determining that the decedent changed his residence, it is found from the testimony of Nora Cote who operated the rest home at Alder, Madison County, Montana. When speaking of a conversation Mrs. Cote had with the decedent, the following was said:

"'I told him that I was worried about having the money on him and asked him to put it in the bank and he refused.

: "Q. At his refusal did you state that you might have to require his leaving? A. Yes, I did.

"Q. And what was his reaction? A. He cried and didn't want to leave. He wanted to make his home there, he said.

"Q. And did he remain there until the time of his death? A. He did."

An isolated utterance made by the decedent while being threatened to be put out of a rest home, to the effect that he wanted to remain there, that it was the only home he had, is admissible in cases of this character, but is considered by the courts as the lowest species of evidence. Such expressions or declarations are influenced by the circumstances under which and by the person to whom they are made and by the state of passion at the time. They cannot be safely relied upon and must give way to more convincing evidence. Compare Pickering v. Winch, 48 Or. 500, 87 Pac. 763, 9 L. R. A., N. S., 1159.

There is nothing in the record other than the statement of Mrs. Cote that suggests the residence of the decedent had been changed other than the additional fact that he did move from Beaverhead to Madison County to the rest home.

After the decedent went to the rest home he sent for, received and marked an absent ballot, thereby voting in Beaverhead County.

"Of all the formal acts to be scrutinized in ascertaining a person's domicile, undoubtedly the act of registering and voting is the most important, and, while not necessarily conclusive, it is usually most convincing and persuasive." In re Curtiss' Will, 140 Misc. 185, 250 N. Y. S. 146, 155; Hiatt v. Lee, 48 Ariz. 320, 61 Pac. (2d) 401, 107 A. L. R. 444, and cases cited therein.

In the case of Cooper's Administrator v. Commonwealth, 121 Va. 338, 93 S. E. 680, 683, the following appears: "In doubtful cases particular significance should be attached to the repeated exercise of the right to vote, because this right depends upon citizenship and domicile, and must be generally, if not universally, supported by the oath of the voter. Its unlawful exercise subjects him to prosecution both for illegal voting and for perjury if he swears falsely, and such act is a distinct, unequivocal, and public assertion by the voter of his legal domicile."

234

See Herrin v. Herrin, 103 Mont. 469, 63 Pac. (2d) 137; District of Columbia v. Murphy, 314 U. S. 441, 62 S. Ct. 303, 86 L. Ed. 329.

Mrs. Cote said the decedent intended to make the rest home his home and she got this impression from him during a conversation had when he first came to the rest home from Beaverhead County. Yet after this impression was gained by Mrs. Cote, the decedent made an application for a ballot and voted in the November 4th general election of 1952 in Beaverhead County.

Under R. C. M. 1947, sec. 23-302, the decedent, if he was a resident of Madison County, was not legally entitled to vote in Beaverhead County. At least we may assume from the decedent's act in connection with voting that he intended to retain his residence in Beaverhead County. Further things appearing in the record bear out this assumption.

It stands undisputed that the decedent attempted, through a welfare worker, to obtain rest home care in Beaverhead County. When it was determined that no such care could then be provided, he agreed to go to the home in the adjacent County of Madison. It is evident from the record that the decedent bought and paid for funeral services and a cemetery lot at a time while he was in the Alder rest home and this was done through an undertaker in Dillon, Beaverhead County, Montana, and it was provided that the decedent was to be buried in that county.

It seems plain that deceased's physical presence in Madison County was for a special purpose, as intended by R. C. M. 1947, sec. 83-303. The decedent went to the rest home at Alder because there was no similar care that could be given him at Dillon. He obviously felt that his days of life were limited and his desire that he be buried at Dillon suggests that he had no intention to change his residence.

''But a residence for mere pleasure or health is not regarded as of any great weight in determining the question of a change of domicile, for, in such case it is just as likely that the party intends to retain as to abandon his present domicile.'' Pickering

v. Winch, supra [48 Or. 500, 87 Pac. 767] ; In re Meyer's Estate, 137 Neb. 60, 288 N. W. 35; Hiatt v. Lee, 48 Ariz. 320, 61 Pac. (2d) 401, 107 A. L. R. 444; 17 Am. Jur., Domicil, sec. 30, pp. 608, 609.

An established domicil continues until it is superseded by a new domicil. 17 Am. Jur., Domicil, sec. 17, p. 601.

In the instant case the decedent did not evidence intent to change his domicil from Beaverhead County to Madison County, but on the contrary, the evidence is such that there is no doubt but what the decedent intended to and did retain his legal residence in Beaverhead County. Residence cannot be lost until another is gained. Herrin v. Herrin, supra.

The judgment of the district court is reversed with directions to nullify the letters of administration granted to the respondent and grant letters of administration to the appellant.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES BOTTOMLY, FREEBOURN and ANGSTMAN, concur.