SOLOMON SONKIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sonkin v. Commissioner
Docket No. 2520-74.
United States Tax Court
T.C. Memo 1978-91; 1978 Tax Ct. Memo LEXIS 426; 37 T.C.M. (CCH) 421; T.C.M. (RIA) 780091; March 6, 1978, Filed *426 P visited his mother in Arizona for 60 days in 1945-1946. During such visit, he did not intend to remain in Arizona. From 1946 through 1976, he resided in Germany. Held, P was not domiciled in the State of Arizona in 1971. John E. O'Hare, for the petitioner. Douglas K. Cook and Matthew Magnone, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency in the petitioner's Federal income tax for 1971 of $1,752.88, and the petitioner claimed an overpayment in such tax of $841.00. Due to concessions, the only issue for decision is whether in 1971, the petitioner was domiciled in the State of Arizona, a community property State, so that one-half of his income could be attributed to his nonresident alien wife and thus excluded *427 from his gross income. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Solomon Sonkin, resided at Frankfurt, Germany, at the time he filed his petition in this case. He filed his Federal income tax return for 1971 with the Director of the Western Region Service Center, Ogden, Utah. The petitioner was born, reared, educated, and upon graduating from high school, employed in Bronx, N. Y. He lived there with his mother until October 29, 1942, when he joined the Army. Sometime thereafter, but prior to November 1945, his mother moved to Tucson, Ariz., and she took with her whatever personal belongings the petitioner had left with her when he entered the Army. After the hostilities in Europe ended, the arduous process of recovering from the devastation of World War II commenced. The U.S. Army of Occupation in Europe needed civilian employees to assist in administering the postwar European reconstruction effort. To make civilian employment in Europe more attractive, the Army offered to transport qualified military personnel to the United States for 60 days [1] of rest, recuperation, and recovery (R & R) at the Army's *428 expense, provided such personnel agreed to be discharged in Europe and to sign a 1-year civilian employment contract with the Army of Occupation in Europe. The petitioner, who was stationed in Europe, accepted the Army's offer in 1945. He began his 60-day R & R on November 28, 1945, and spent his entire leave visiting his mother in Tucson, Ariz. During this period, he opened a bank account with the Valley National Bank in Tucson, Ariz.
Upon termination of his leave, the petitioner returned to Europe, where he was honorably discharged from the Army on March 25, 1946. He worked as a civilian employee with G-4, Supreme Headquarters, American Expeditionary Force, Europe, until November 25, 1946. Thereafter, he was employed in Europe by Army and Air Force Motion Picture Service until he retired on July 31, 1975. From August 7, 1975, to the time of trial, the petitioner was employed by Frankfurt Audio/Photo Club 02. With each of these employers, the petitioner's post of duty was in Germany; he has not entered the United States since returning *429 to Europe in 1946. In 1946, the petitioner married Theresa Pauper, a French national, who gave birth to a daughter in that year. The petitioner divorced her in 1951 but continued to make support payments. In 1959, he married Hertha Anna Kaiser, a German national, who subsequently died on April 30, 1963. He married his present wife, Dorothea E. Sonkin, a German national, on September 30, 1968. Mrs. Sonkin's family, including her mother, brother, sister, and son by a previous marriage, lives in Germany. Mrs. Sonkin speaks "some" English, and the petitioner speaks "some" German. In 1972, the petitioner and his wife purchased an apartment in Germany. Prior thereto, the petitioner lived in U.S. Government quarters or other economy housing. While in Germany, he had a bank account with the U.S.Military Bank of American Express International. After entering the service, the petitioner had virtually no further contact with New York State. He owned no real estate in New York, he paid no New York State taxes other than sales tax, and he never registered to vote there. The petitioner became a registered voter of Arizona in 1972, and as such, he voted in the 1972 presidential election *430 and in two subsequent local elections. At no time was the petitioner active in community affairs in New York, Arizona, or Germany. In addition, he never sought employment in Arizona. On his 1971 Federal income tax return, the petitioner reported only one-half of his income because he claimed that, under the community property laws of Arizona, the other half was attributed to his nonresident alien wife. In his notice of deficiency, the Commissioner determined that all of the petitioner's income should have been included in his gross income because the community property laws of Arizona were not applicable since the petitioner was not domiciled there. OPINION The only issue for decision is whether the petitioner was domiciled in Arizona in 1971. The petitioner, whose undisputed domicile of origin was New York State, claims that he abandoned such domicile when he acquired a domicile of choice in Arizona in 1945-1946. In addition, he contends that notwithstanding his uninterrupted residence in Germany from 1946 to 1976, he has always had a persisting intent to return to Arizona, and therefore, he never abandoned such domicile. On the contrary, the Commissioner asserts that *431 the petitioner never acquired a domicile in Arizona. In the alternative, the Commissioner argues that even if the petitioner was domiciled in Arizona in 1946, he had abandoned such domicile by 1971. To acquire a domicile of choice, it must be established that during the period of actual residence in a location a person has a present intent to remain at such location and establish a home there. Texas v. Florida,306 U.S. 398, 424 (1939); Mitchell v. United States,88 U.S. (21 Wall.) 350, 353 (1974); Taira v. Commissioner,51 T.C. 662 (1969); Hampton v. Commissioner,38 T.C. 131 (1962); Crespi v. Commissioner,44 B.T.A. 670 (1941); see Arizona Board of Regents v. Harper,108 Ariz. 223, 495 P. 2d 453 (1972); McIntosh v. Maricopa County,73 Ariz. 366, 241 P. 2d 801 (1952); Restatement, Conflict of Laws 2d, secs. 14-16, 18 (1971). If actual residence and the requisite intent do not co-exist, a domicile cannot be acquired. Mitchell v. United States,supra;Sivalls v. United States,205 F. 2d 444, 446 (5th Cir. 1953), *432 cert. denied 346 U.S. 898 (1953); Shilkret v. Helvering,138 F. 2d 925, 927-928 (D.C. Cir. 1943), affg. 46 B.T.A. 1163 (1942); Hampton v. Commissioner,supra;Marshall v. Commissioner,41 B.T.A. 1064 (1940). However, once acquired, a domicile is not lost merely by a change of residence, if such change is accompanied by a persisting intent to return to the previously established domicile. Crespi v. Commissioner,supra;Hornsby v. Commissioner,26 B.T.A. 591, 593 (1932). Whether the petitioner ever acquired a domicile of choice in Arizona, in the first instance, is a question of fact, and the petitioner has the burden of persuading this Court that while he was physically present in Arizona in 1945-1946, he intended to remain and establish his home there. Rule 142, Tax Court Rules of Practice and Procedure; Mitchell v. United States,supra;Gooding v. Commissioner,27 T.C. 627, 633 (1956), affd. per curiam 250 F. 2d 765 (D.C. Cir. 1957). His testimony regarding "his intention is, of course, to be given full and fair *433 consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts." District of Columbia v. Murphy,314 U.S. 441, 456 (1941). Based on all of the surrounding facts and circumstances, we conclude that the petitioner has failed to carry his burden. See Shilkret v. Helvering,supra;Rosenberg v. Commissioner,37 F. 2d 808, 810 (D.C. Cir. 1930), affg. 10 B.T.A. 601 (1928); Gooding v. Commissioner,supra.
In support of his contention that he acquired a domicile in Arizona in 1945-1946, the petitioner relies upon his declarations of intention, his visit there at that time, and his establishment of a bank account there. However, the evidence overwhelmingly demonstrates that the petitioner did not intend to establish such a domicile. After entering the Army, but prior to the time his mother moved to Arizona, all of his contacts were with New York State. He was born, reared, educated, and employed there. When his mother moved to Arizona, it may well have been that *434 the petitioner's contacts with New York ended; nevertheless, until he visited his mother in Arizona, his contacts with Arizona were purely vicarious. Moreover, any attempt to imbue his brief stay in Arizona with the intent to remain and set up his home there flies in the face of the evidence. By its very nature, his stay in Arizona was temporary. When he went to Arizona, he was already committed to return to Europe for at least 1 year. He did not seek employment in Arizona while he was physically present there, nor did he look for employment in Arizona at the termination of his 1-year European employment contract. At no time had he formulated definite plans to settle down in Arizona. In fact, when he returned to Europe in 1946, he married a French woman and ostensibly established his home in Germany. Even the petitioner's testimony that his intent during his R & R was to "settle down permanently" in Arizonaafter he returned from Europe sometime in the future is at odds with the acquisition of a domicile there. The mere fact that he was physically present in * * * [Arizona] at a time when he intended to at some future date establish his domicile there does not constitute *435 the concurrence of physical residence and intent essential to the establishment of a domicile of choice. * * * [Sivalls v. United States,205 F. 2d at 446.] Furthermore, subsequent events buttress our conclusion that the petitioner never intended to establish a domicile in Arizona; these events also convincingly demonstrate that even if he had acquired such domicile, he had abandoned it by 1971. The petitioner has resided and worked in Germany for over 30 years; he has not entered the United States since 1946. Even when he retired from the Army and Air Force Motion Picture Service after nearly 30 years' employment, he had no plans to return to Arizona; rather, he commenced working in Germany for the Frankfurt Audio/Photo Club 02. During his 30-year residence in Germany, the petitioner was married three times to European women. There is no evidence that any of these women was amenable to moving to the United States. In fact, the petitioner's present wife has strong family ties in Germany.The permanence of the petitioner's residence in Germany is evidenced by the fact that he and his wife jointly purchased an apartment there in 1972. Although such purchase *436 occurred after the year in issue, its proximity to the year in issue furnishes some evidence of his intention in 1971. Under the circumstances, it cannot be found that he had the requisite "persisting intent" to return to Arizona. See Taira v. Commissioner,supra.
Our conclusion is not altered by the three factors relied on by the petitioner to support his position that he was domiciled in Arizona. First, he claims that his lack of participation in community affairs in Germany indicates that he was not domiciled there; but such fact is unpersuasive where, as here, there is no evidence that the petitioner was active in community affairs anywhere. Second, the petitioner relies upon the fact that he became a registered voter in Arizona. Clearly, "Whether or not one votes where he claims domicile is highly relevant but by no means controlling." District of Columbia v. Murphy,314 U.S. at 456; Pentland v. Commissioner,11 T.C. 116, 121-122 (1948). During the year in which he registered to vote, he also purchased property in Germany. We wonder why he waited 25 years to register in Arizona; we wonder whether it had anything *437 to do with this tax controversy. See Taira v. Commissioner,51 T.C. at 669. In view of these doubts, the place of voting has little significance, and it is not enough to overcome the other evidence in the case. Pentland v. Commissioner,supra.
Finally, the petitioner claims that he had an "equitable interest" in Arizona real estate because he allegedly contributed several thousand dollars toward the purchase of his mother's house there. However, his mother had legal title to this property, and there is no evidence that such title was encumbered by the petitioner's so-called equitable interest therein. Without any evidence to substantiate such claim, other than the petitioner's vague reference to that effect, we cannot conclude that he in fact had any interest in his mother's real estate. Decision will be entered for the respondent. Footnotes
1. Initially, only a 45-day leave was offered, but to provide further inducement, the leave was subsequently extended to 60 days.↩