NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

BROOKLYN DANKO,
*Petitioner/Appellee*,

v.

JOHN DANKO, III,
*Respondent/Appellant*.

No. 1 CA-CV 20-0094 FC

FILED 10-8-2020

Appeal from the Superior Court in Maricopa County
No.  FC2019-007054
The Honorable Michael C. Blair, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

The Law Office of Scott J. McWilliams, LLC, Phoenix
By Scott J. McWilliams, Christopher E. Hewitt
*Counsel for Respondent/Appellant*

Berkshire Law Office, PLLC, Tempe
By Erica L. Gadberry, Keith Berkshire
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Paul J. McMurdie joined.

---

**M O R S E**, Judge:

¶1          John Danko III ("Father") appeals the superior court's dismissal of multiple motions for lack of jurisdiction. For the following reasons, we affirm in part, vacate in part, and remand.

## FACTS AND PROCEDURAL BACKGROUND

¶2          We view the record in the light most favorable to sustaining the superior court's ruling. *Swichtenberg v. Brimer*, 171 Ariz. 77, 82 (App. 1991).

¶3          Father and Brooklyn Danko ("Mother") married in January 2003 in Columbia, South Carolina. Mother petitioned for a dissolution of marriage and the superior court entered a default decree on February 16, 2018, in Pima County ("Decree"). The court awarded sole legal decision-making of the couple's three children to Mother. The Decree also included an award for child support, spousal maintenance, and attorney fees.

¶4          The superior court also signed and filed two Qualified Domestic Relations Orders ("QDROs"). As set forth in the Decree, the first QDRO allocated 50% of Father's 401(k) to Mother. The second QDRO allocated an additional $36,562.60 from the 401(k) to Mother representing an award of attorney fees. On May 31, 2018, Mother filed a proposed amended QDRO that would award her 100% of the "vested account balance." Father did not object, and the Court entered the order on June 12, 2018.

¶5          On June 14, 2018, Father filed a motion for relief from judgment requesting various forms of relief. The motion notes that due to "Mother's ongoing vexatious and litigious behavior, and the loss of his job, Father was forced to move to South Carolina in November of 2017." In July 2018, Father filed a Motion for Telephonic Appearance in the superior court in Arizona in which he asserted that: "Father lives in South Carolina."

**¶6** The superior court denied Father's motion for relief from judgment on August 13, 2018. Father untimely filed a notice of appeal, and his appeal was dismissed. *See Danko v. Danko*, 2 CA-CV 2018-0165-FC (Ariz. App. Aug. 27, 2019) (order dismissing appeal).

### *South Carolina Litigation*

**¶7** Before the entry of the Decree, Mother received permission from the superior court to relocate to South Carolina. Mother and the children have remained in South Carolina throughout these proceedings. After a hearing on April 5, 2018, the superior court noted the relocation when it observed "[b]oth parties appearing to have relocated to the state of South Carolina."

**¶8** On July 5, 2018, Mother filed a "Notice of Filing and Registration of a Foreign Judgment" in Richland County, South Carolina. Mother asserted that Father was a resident of South Carolina. The South Carolina Family Court for the Fifth Judicial Circuit ("South Carolina Court") filed an "Order Confirming Registration Enrollment and Enforcement of Foreign Order" on August 22, 2018.

**¶9** In April 2019, Father filed in the South Carolina Court a "Complaint to Modify Prior Orders." In the complaint, Father sought custody of the children or alternatively joint custody with Father being named the primary custodial parent. Father also asserted that he was a resident of Columbia County, South Carolina and that South Carolina had jurisdiction over the parties due to Mother registering the Arizona order. The complaint contained a verification, signed by Father, and notarized by a South Carolina notary, stating that Father had "read the foregoing complaint and it is true of my own knowledge . . . ."

**¶10** In July 2019, Father filed in South Carolina for a "Modification of Alimony/Child Support." Father claimed to be a citizen and resident of Berkley County, South Carolina. The South Carolina Court consolidated Father's fillings.

**¶11** On October 29, 2019, the South Carolina Court noted its previous findings "that as the parties have now both returned to and resided in South Carolina, that South Carolina was now the home state for any and all litigation concerning enforcement and/or modification of the Arizona final order." The South Carolina Court further found that it "has not only continuing exclusive jurisdiction over the matters contained in the orders as enrolled in SC, but also personal and subject matter jurisdiction of the issues and parties as to the modification and enforcement actions

filed in this Court." When Father failed to appear at a hearing, the South Carolina Court ordered that it "deems both motions abandoned and hereby dismisses [Father's] Motions."

¶12        On November 26, 2019, Father filed a motion for temporary modification of parenting time, child support, and spousal support in South Carolina.

*Renewed Arizona Litigation*

¶13        While Father was litigating in South Carolina, he also reinitiated litigation in Arizona. On July 3, 2019, the superior court granted Father's Motion to transfer the case from Pima County to Maricopa County based on Father's assertion that he "is domiciled in Maricopa County."

¶14        In September 2019, after the first appeal was dismissed, Father filed in Arizona a "Petition to Enforce February 15, 2018, Decree of Dissolution of Marriage with Children, and April 5, 2018, Minute Entry, re: Payment of Debts." Father's petition addressed issues relating to taxes, a vehicle loan, child support overpayments, and proceeds from the sale of the marital home.

¶15        On October 7, 2019, Father filed in Arizona a "Petition for Modification of Spousal Maintenance, Child Support, Legal Decision Making, and Parenting Time." Three days later, Father filed a "Motion for Relief from Second Qualified Domestic Relations Order and Amended Second Qualified Domestic Relations Order."

¶16        Mother filed two motions to dismiss. Mother's first motion asserted that Father's failed appeal bars his requests for relief from the QDRO. Mother's second motion argued that the court lacked jurisdiction over child support and parenting time because Father, Mother, and the Children had all moved to South Carolina, the Decree had been registered in South Carolina, and Father had extensively litigated in South Carolina. Mother also argued that the motion to modify spousal maintenance should be dismissed because the change in circumstances alleged by Father occurred before the Decree.

¶17        The superior court held a status conference in November 2019. The court decided to schedule a conference call with the South Carolina Court to address which court had jurisdiction. The superior court later noted "that its staff made multiple [unsuccessful] attempts over several weeks to schedule a UCCJEA conference call with the South Carolina Court."

¶18        After the hearing, Father filed a "Notice to the Court on Jurisdiction and Request to Affirm Jurisdiction in Arizona." Father asserted that he has continuously resided in Arizona, that three of his attorneys mistakenly represented that he resided in South Carolina, and that Father signed the notarized verification without actually reading the document filed by his attorney.

¶19        The superior court held a telephonic status conference in December 2019. At the conference, the court raised the issue of *forum non conveniens*. *See* A.R.S. § 25-1037(B).

¶20        The court held that Arizona no longer had "home state" jurisdiction over the children and that "even if Arizona wanted to retain jurisdiction, Arizona would [b]e an inconvenient forum." Noting Father's inconsistent assertions to various courts regarding his residency, the superior court further found that Father's filings were not in good faith. The court dismissed all pending motions and awarded Mother her attorney fees. The Court signed the order pursuant to Arizona Rule of Family Law Procedure ("ARFLP") 78(b).

¶21        Father timely filed a notice of appeal. Over Father's objection, the superior court then entered a judgment against Father for attorney fees. Father timely filed an amended notice of appeal. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(2).

## DISCUSSION

### I.    South Carolina Retains Exclusive Jurisdiction Over Child Custody Determinations.

¶22        "We review de novo whether a court has subject matter jurisdiction under the" Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *Mangan v. Mangan*, 227 Ariz. 346, 350, ¶ 16 (App. 2011).

¶23        As codified in Arizona, A.R.S. § 25-1032 reflects the UCCJEA's goal of allowing the court that made the original custody determination to retain exclusive, continuing jurisdiction over that order. *Melgar v. Campo*, 215 Ariz. 605, 607, ¶¶ 10-11 (App. 2007). One exception applies when "a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state." A.R.S. § 25-1032(A)(2). That exception applies here.

¶24	The South Carolina Court determined it had jurisdiction over child custody determinations after it found that (1) South Carolina was the children's "home state" and (2) both parents had relocated to South Carolina. *See* S.C. Code Ann. § 63-15-330(A)(1) and -334(2). We give full faith and credit to the determination of the South Carolina Court. *See* A.R.S. § 25-1063 ("A court of this state shall afford full faith and credit to an order that is issued by another state, that is consistent with [the UCCJEA]."); *Angel B. v. Vanessa J.*, 234 Ariz. 69, 72 (App. 2014) ("[T]he UCCJEA provides that the issuance of a child custody order by a court with jurisdiction is binding on other states.").

¶25	In his reply, Father relies on the proposition that "the jurisdiction of the court by which a judgment is rendered in any State may be questioned in a collateral proceeding in another State." *Thompson v. Whitman*, 85 U.S. 457, 469 (1873). But Father does not assert on appeal that South Carolina lacked jurisdiction, only that the superior court denied him "the opportunity to contest erroneous documents from South Carolina." Father likewise failed to raise the issue of South Carolina's jurisdiction in his September 12 petition, his October 7 petition, and his October 10 motion. In Father's "Notice of Jurisdiction," he merely asserted that "paragraph 2 of A.R.S. § 25-1032(A) is not applicable as Father has continuously resided in Arizona from June 5, 2006, to present." We find this insufficient to preserve a collateral attack on the validity of another court's judgment. *See City of Tempe v. Fleming*, 168 Ariz. 454, 456 (App. 1991) ("[A]rguments not made at the trial court cannot be asserted on appeal.").

¶26	Furthermore, we find no defect in the South Carolina Court's order. *See Lofts v. Superior Court*, 140 Ariz. 407, 410 (1984) (discussing collateral attacks on a foreign court's jurisdiction). Father filed multiple pleadings in South Carolina asserting that he was a resident of South Carolina. One pleading admitted that South Carolina had jurisdiction over the parties. *See Johnson v. Alexander*, 775 S.E.2d 697, 700 (S.C. 2015) ("Parties are generally bound by their pleadings and are precluded from advancing arguments or submitting evidence contrary to those assertions."). That pleading was signed by Father and notarized. Although Father asserts that he did not read the verification before signing, as the Supreme Court said, "if he will not read what he signs, he alone is responsible for his omission." *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875).

¶27	Accordingly, we affirm the superior court's determination that South Carolina, not Arizona, has exclusive jurisdiction over child custody determinations.

**II.    Arizona Lacked Jurisdiction Over the October 2019 Child Support Modification Petition.**

**¶28**        Arizona and South Carolina have both adopted the Uniform Interstate Family Support Act ("UIFSA").  *See* A.R.S. §§ 25-1201 to -1362; S.C. Code Ann. §§ 63-17-2900 to -4040.   We review the superior court's jurisdiction under the UIFSA de novo.  *McHale v. McHale*, 210 Ariz. 194, 196, ¶ 7 (App. 2005).

**¶29**        Arizona's UIFSA provides that this state maintains continuing exclusive jurisdiction to modify a child support order issued in this state if "[a]t the time of the filing of a request for modification this state is the residence of the obligor, the individual obligee or the child for whose benefit the support order is issued."  A.R.S. § 25-1225(A)(1).  The superior court does not retain jurisdiction to modify an order if the parties and the child are no longer residents of Arizona.  *McHale*, 210 Ariz. at 198, ¶ 14.  A person's residence, or domicile, "is primarily a state of mind combined with actual physical presence in the state."  *Ariz. Bd. of Regents v. Harper*, 108 Ariz. 223, 228 (1972); *see McIntosh v. Maricopa County*, 73 Ariz. 366, 368 (1952) (noting that a person may have only one domicile at a time).

**¶30**        Father asserts that Arizona had jurisdiction because Arizona issued the initial child support order and Father resides in Arizona.  Mother asserts that Father is a resident of South Carolina, and thus the court lacks jurisdiction.  While the superior court made no factual finding regarding Father's residency, such a finding was unnecessary.  *See Elliott v. Elliott*, 165 Ariz. 128, 135 (App. 1990) (noting that "an appellate court may infer that the trial court has made the additional findings necessary to sustain its judgment").

**¶31**        In July 2019, Father sought a modification of child support in South Carolina asserting that he was a South Carolina resident.  On October 7, 2019, Father sought a modification of child support in Arizona.  Father did not assert that he was an Arizona resident.  On October 29, 2019, the South Carolina Court determined Father was a resident of South Carolina.  In November, after Mother filed her motion to dismiss, Father again sought modification of child support in South Carolina.  Only in December did Father allege he was a resident of Arizona.

**¶32**        Father presented evidence of his continuing residence in Arizona by way of utility bills and a signed affidavit.  However, such evidence does not overcome the judicial finding that Father was a resident of South Carolina when he filed the petition in October 2019.  That finding

is entitled to full faith and credit. *Lofts*, 140 Ariz. at 411. Nor does the record suggest that Father sought review or reconsideration of the South Carolina Court's determination. Indeed, the record reveals that Father continued to seek a modification of child support in South Carolina *after* Mother sought dismissal in Arizona for lack of jurisdiction. Such parallel proceedings imply Father has engaged in the kind of forum shopping that the UIFSA was enacted to prevent. *See Badeaux v. Davis*, 522 S.E.2d 835, 841 (S.C. Ct. App. 1999) (discussing policy rationale of the UIFSA).

¶33        Because Father was not an Arizona resident when he filed his petition for modification, Arizona lacked jurisdiction over his petition. *See* A.R.S. § 25-1225(A)(1); *McHale*, 210 Ariz. at 198, ¶ 14.[1] Accordingly, we affirm the superior court's dismissal of Father's petition to modify child support.

### III.    Spousal Maintenance and Decree Enforcement.

¶34        Mother conceded that Arizona has exclusive jurisdiction over Father's petition to modify the award of spousal maintenance. *See* A.R.S. § 25-1231(A). Mother also conceded that Arizona has jurisdiction over Father's petition to enforce the Decree. At oral argument, Mother's counsel stated that she had no objection to a remand for the superior court to consider the enforcement issues.

¶35        Accordingly, we vacate the superior court's determination that it lacked jurisdiction over the petition to modify the award of spousal maintenance. We further vacate the court's dismissal of the petition to enforce the Decree on jurisdiction or *forum non conveniens* grounds, and remand for further proceedings.

### IV.    Relief from the QDROs.

¶36        Father also challenges the dismissal of his motion for relief from the QDROs and argues that the QDROs are void.

¶37        The superior court noted during the December 2019 status conference that "I believe the QDRO issue's already resolved on appeal." However, the superior court did not specify in its order the rationale for

---

[1]        *Cf. Kennedy v. Wybenga*, 1 CA-CV 17-0559 FC, 2018 WL 4374636, at *2, ¶¶ 8-11 (Ariz. App. Sept. 11, 2018) (mem. decision) (finding Arizona retained continuing, exclusive jurisdiction to modify its original child support order, despite Father's temporary relocation to California, when no party sought modification in California).

dismissing Father's motion regarding the QDROs. We will affirm the superior court's order if it is legally correct for any reason. *Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9 (App. 2006).

## A.      Father is Precluded from Re-raising the Property Determination.

**¶38**          Father argues that the superior court lacked jurisdiction to order the QDROs because his 401(k) contained substantial separate property. *See* A.R.S. § 25-318; *Weaver v. Weaver*, 131 Ariz. 586, 587 (1982). However, the superior court found that Father's 401(k) "is a community asset that should be equally divided between the parties." Accordingly, Father's argument is a challenge to the superior court's community property determination. *See DeMarce v. DeMarce*, 101 Ariz. 369, 371 (1966) (noting "the court has jurisdiction to determine what property is community property").

**¶39**          Regarding the first QDRO, Father raised this argument in his June 2018 motion to set aside. He failed to timely appeal that order and thus it remains final. *Kenyon v. Kenyon*, 5 Ariz.App. 267, 269-70 (1967) (holding that prior judgment that husband failed to appeal precluded relitigating issue).

**¶40**          Regarding the other QDRO, any argument is waived because Father failed to raise it in a timely manner. *See Davis v. Davis*, 230 Ariz. 333, 338, ¶¶ 27-28 (App. 2012) (finding husband's argument that retirement plan was his separate property "waived because he failed to raise it with the family court"); *Bogard v. Cannon & Wendt Elec. Co.*, 221 Ariz. 325, 333 (App. 2009) (providing that questions that could have been raised on the first appeal cannot be presented or considered on a later appeal).

## B.      Father is Precluded from Contesting the QDROs' Fairness.

**¶41**          Father also argues that the QDROs are void because they exceed the relief Mother requested in her petition for dissolution. "A judgment in a default case that awards relief that either is more than or different in kind from that requested is null and void." *S. Ariz. Sch. For Boys, Inc. v. Chery*, 119 Ariz. 277, 283 (App. 1978); *see Sullivan v. Logue*, 1 CA-CV 14-0143, 2015 WL 770418 (Ariz. App. Feb. 24, 2015) (mem. decision) (applying *S. Ariz. Sch.* to a QDRO in a dissolution case).

**¶42**          In her petition for dissolution, Mother requested that the court "[e]nter an order equitably dividing the community property of the

parties." The amended QDRO orders that Mother's "interest in the Plan shall be 100% of the Participant's vested account balance."

**¶43** Determining whether the QDRO exceeded the relief requested requires a review of whether the award was equitable. "Equitable" "is a concept of fairness dependent upon the facts of particular cases." *Toth v. Toth*, 190 Ariz. 218, 221 (1997). An equitable distribution of property need not be exactly equal "but must result in substantial equality." *Miller v. Miller*, 140 Ariz. 520, 522 (App. 1984); *see In re Marriage of Flower*, 223 Ariz. 531, 537, ¶ 24 (App. 2010) ("Division of property upon dissolution should . . . take into consideration the overall marital estate."). The superior court has broad discretion in apportioning community property. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007).

**¶44** Father argued in his June 2018 motion for relief that the QDROs "should be set aside as they are inequitable." The superior court rejected Father's arguments and found the QDROs equitable. We need not review the court's discretion in this second appeal. *See Kenyon*, 5 Ariz.App. at 269-70.

## V. Father's Was Not Denied Due Process.

**¶45** Father argues that the court denied him due process by granting Mother's motions to dismiss without allowing an opportunity to respond. *See* Ariz. R. Fam. Law P. 35(a)(3) (providing that "a response must be filed within 10 days after service of the motion"). "The essential requirements of procedural due process are reasonable notice and an opportunity to be heard." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 18 (App. 2005). We find no due-process violation in these circumstances. The superior court allowed Father to be heard and considered Father's "Notice to the Court on Jurisdiction." The court then determined it lacked jurisdiction. *See Swichtenberg*, 171 Ariz. at 82 (holding trial court can resolve jurisdictional fact issues). Neither the due process clause nor the Rules of Family Law Procedure required more. *See Cal. Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 280 (9th Cir. 1974) ("It has long been held that a judge can dismiss *sua sponte* for lack of jurisdiction.").

## VI. Attorney Fees.

**¶46** The superior court ordered Father to pay $7,691.78 of Mother's attorney fees and costs pursuant to A.R.S. § 25-324(B)(1). Father raises multiple challenges on appeal to the court's award of fees.

**¶47**         Father argues that his notice of appeal divested the superior court of jurisdiction to award Mother fees.  Father's argument misapplies ARFLP 78(B) and we reject it.  *See Bollermann v. Nowlis*, 234 Ariz. 340, 342, ¶ 8 (2014) (stating that "absent Rule 78(B) language determining there is no just reason for delay and directing entry of final judgment, a judgment that does not dispose of a request for attorneys' fees is not final for purposes of appeal").

**¶48**         We decline to address Father's remaining arguments.  Because the superior court erred in concluding that it lacked jurisdiction to modify the spousal support order, we vacate the award of attorney fees and remand for further consideration by the superior court.  *See Palmer v. Palmer*, 217 Ariz. 67, 73, ¶ 22 (App. 2007) (vacating and remanding fee award where "[o]ur substantive ruling . . . may affect the factors that were considered by the family court . . .").

**¶49**         Both parties request an award of attorney fees on appeal.  We find that Father took unreasonable positions in this appeal.  In the exercise of our discretion, pursuant to A.R.S. § 25-324(A), we award Mother a portion of her attorney fees incurred on appeal.  This Court lacks updated financial information from the parties.  Because other issues remain for the superior court to address, we remand to the superior court to determine a suitable award for Mother's fees "after considering the financial resources of both parties."  A.R.S. § 25-324(A); *see also Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189 (App. 1983) ("[A]n appellate court is somewhat unsuited for the fact-finding inquiry which is frequently necessary to properly determine reasonable fees for legal services rendered.").  As Mother prevailed in all disputed matters on appeal, we award Mother her costs.  *See* ARCAP 21.

**CONCLUSION**

**¶50** For the foregoing reasons, we hold: (1) that South Carolina has jurisdiction over requests for modification of child custody; (2) that Arizona lacked jurisdiction over Father's October 2019 request for modification of child support; (3) that Arizona retains jurisdiction over issues of spousal maintenance and enforcement of the Decree; (4) that the court correctly dismissed Father's motion for relief from the QDROs; and (5) that Father was not denied due process. Accordingly, we vacate the dismissal of Father's petition for modification of spousal maintenance, the dismissal of Father's petition to enforce the Decree, and the superior court's award of attorney fees. We affirm in all other respects and remand for further proceedings.

